609 So.2d 803 (1992)
STATE of Louisiana
v.
Donald KNOX.
STATE of Louisiana
v.
Rometro JACKSON.
No. 91-KK-1906.
Supreme Court of Louisiana.
November 30, 1992.
*804 Kathryn M. Flynn, David W. Price, Baton Rouge, for applicant.
Richard P. Ieyoub, Atty. Gen., Douglas P. Moreau, Dist. Atty., Gwendolyn K. Brown, Aaron D. Brooks, Asst. Dist. Attys., for respondent.
Helen G. Berrigan, New Orleans, for Louisiana Ass'n of Crim. Lawyers, amicus curiae.
Ellis P. Adams, Jr., Baton Rouge, for Louisiana Dist. Atty. Ass'n, amicus curiae.
PER CURIAM.
We granted certiorari in these two consolidated cases to determine whether the State may successfully object during voir dire to a minority defendant's alleged racially discriminatory exercise of peremptory challenges.[1] In each of these criminal cases, the State objected to a black defendant's exercise of peremptory challenges to strike white jurors. The district court overruled the State's objections, finding that the State lacked standing under the Equal Protection Clause to assert violations of the jurors' equal protection rights. The court of appeal reversed and ruled that the State, in defense of a prospective white juror's constitutional rights, may properly raise objections to a black defendant's alleged racially discriminatory exercise of peremptory challenges. For the reasons expressed hereafter, we affirm the decision of the court of appeal. The State may properly object to a minority criminal defendant's racially discriminatory exercise of peremptory challenges, and, consistent with Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), require the defendant to assert a racially neutral explanation for the peremptory challenge.
Each of these criminal cases, consolidated in the court of appeal and in this court, involves a black defendant. Donald Knox was charged with obscenity involving a white female victim and went to trial before a jury of six;[2] Rometro Jackson was charged with distribution of cocaine and was to be tried before a twelve person jury.[3] In both cases, the defendants exercised peremptory challenges against prospective white jurors whereupon the State objected, arguing that the jurors were legally qualified and that voir dire had established no apparent basis for the challenges other than race. The State maintains that criminal defense attorneys should be prohibited from exercising racially based peremptory challenges, and that the State has standing under Batson v. Kentucky, supra, and Powers v. Ohio, 499 U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), to assert the equal protection rights of a prospective juror to serve on the jury. The defendants, relying upon Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), contend that criminal *805 defense attorneys are not state actors, but are instead adversaries of the State, and that the State cannot object to a defendant's peremptory challenges.
The very recent United States Supreme Court case of Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), presented almost identical issues as those raised in this case, with the exception that McCollum involved a white defendant, while this case involves black defendants. The threshold questions which the Supreme Court addressed in McCollum, regarding whether a criminal defense attorney's exercise of peremptory challenges constitutes state action for purposes of equal protection, and whether defense counsel can be considered a state actor in such a circumstance, were presented as well in the case here under review. The U.S. Supreme Court determined in McCollum that state action is present and that a criminal defense attorney is a state actor when exercising peremptory challenges, thereby implicating the Equal Protection Clause of the United States Constitution.[4]McCollum, 505 U.S. at ___, 112 S.Ct. at 2354-2357. Because that aspect of McCollum decides those same questions in this case, we are no longer confronted with deciding those issues.
The remaining important issue which we must resolve in this case is whether the holding in McCollum, that "the [United States] Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges," 505 U.S. at ___, 112 S.Ct. at 2359, should include the situation where a black criminal defendant exercises peremptory challenges against white prospective jurors. McCollum involved the reverse situation, white criminal defendants charged with criminal conduct against black victims. The defendants there expressed the intention of exercising their peremptory challenges to exclude African-American citizens from participating as jurors in the trial. McCollum, 505 U.S. at ___, 112 S.Ct. at 2351. The Supreme Court determined that the white criminal defendant who exercises racially discriminatory peremptory challenges (against black prospective jurors) inflicts the harms that were addressed in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because the rejected juror "... is subjected to open and public racial discrimination." McCollum, 505 U.S. at ___, 112 S.Ct. at 2353. Furthermore, "[s]election procedures that purposefully exclude African-Americans from juries undermine ... public confidence [that the verdict is given in accordance with law by persons who are fair]." McCollum, 505 U.S. at ___, 112 S.Ct. at 2353. Other language in this opinion is more general and prohibits all criminal defendants from exercising racially based peremptory challenges.[5]
As already noted, the cases at hand are distinguishable from McCollum in that they involve black criminal defendants. Such was the case also in a second Georgia case which arose at almost the same time as McCollum. In State v. Carr, 261 Ga. 845, 413 S.E.2d 192 (1992), just as in this case, a black criminal defendant challenged white jurors. Writs to the United States Supreme Court in that case have very recently been acted upon. Our decision today *806 will therefore be affected by Carr as well as by McCollum.
A review of the history of these two cases, McCollum and Carr, is essential at this point. In McCollum, the Georgia Supreme Court held that it would not prohibit racially based peremptory challenges by a white criminal defendant's excusing black potential jurors. The State of Georgia applied for a writ of certiorari to the United States Supreme Court. Meanwhile, in February 1992, while McCollum was pending in the Supreme Court, the Georgia Supreme Court in Carr ruled once more that it would not prohibit a black criminal defendant from exercising racially based peremptory challenges to excuse white potential jurors, stating that its own decision in State v. McCollum, 261 Ga. 473, 405 S.E.2d 688 (Ga.1991) was controlling. State v. Carr, 261 Ga. 845, 413 S.E.2d 192 (Ga. 1992).
It was only after the decision in Carr by the Georgia Supreme Court that McCollum was decided by the United States Supreme Court. In McCollum the Supreme Court stated:
We hold that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges. The judgment of the Supreme Court of Georgia is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
McCollum, 505 U.S. at ___, 112 S.Ct. at 2359.[6]
In the interim, before the U.S. Supreme Court rendered its opinion in McCollum, the State of Georgia petitioned for writs of certiorari concerning the decision rendered in Carr. Three months after the McCollum decision, the U.S. Supreme Court granted a writ of certiorari in Carr stating "[t]he judgment is vacated and the case is remanded to the Supreme Court of Georgia for further consideration in light of Georgia v. McCollum." Georgia v. Carr, ___ U.S. ___, 113 S.Ct. 30, 121 L.Ed.2d 3 (U.S. October 5, 1992). The Court supplied no written reasons or instructions.
Carr involved the same issue that is before us in this Knox /Jackson case. By upsetting the Georgia Supreme Court's pro-defense resolution and remanding for reconsideration of Carr in light of McCollum, the Supreme Court has indicated that the Carr case is probably affected by its holding in McCollum. Because of the language used in McCollum prohibiting a criminal defendant from exercising racially based peremptory challenges, we determine that the McCollum decision extends to the circumstance at issue in this case where, just as in Carr, a black defendant allegedly exercised, or expressed the intention of exercising, racially based peremptory challenges against white prospective jurors.
Thus, applying our appreciation of the decisions of the U.S. Supreme Court, we decide the issue before us favorably to the State. We will not upset the decision of the First Circuit Court of Appeal which determined that the State may object during voir dire to a black defendant's racially discriminatory exercise of peremptory challenges and thereby invoke the Batson requirement that the challenging defendant must supply racially neutral reasons for exercising these peremptory challenges.[7]

*807 DECREE
For the foregoing reasons, the judgments of the court of appeal in these consolidated cases are affirmed and the cases are remanded to the respective district courts for further proceedings in accordance with this opinion.
AFFIRMED; REMANDED TO DISTRICT COURT
CALOGERO, C.J., and LEMMON, J., concur and assign reasons.
WATSON, J., concurs for reasons assigned by CALOGERO, C.J.
CALOGERO, Chief Justice, concurring.
The majority's resolution of the issues is not implausible. In fact, they accurately assess the U.S. Supreme Court's decision in Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), and reasonably predict how the Court will ultimately resolve the more narrow issue presented in Georgia v. Carr, 261 Ga. 845, 413 S.E.2d 192 (1992), cert. granted, ___ U.S. ___, 113 S.Ct. 30, 121 L.Ed.2d 3 (1992), should that case return to the Court. For that reason, I concur. However, I write separately to express my agreement with the dissents of Justices Scalia and O'Connor and the concurrence of Justice Thomas in McCollum.
As Justice Thomas stated in his concurrence, the Supreme Court's decision in McCollum has resulted in an "inversion of priorities" by "exalt[ing] the right of citizens to sit on juries over the rights of the criminal defendant...." 505 U.S. at ___, 112 S.Ct. at 2360 (Thomas, J., concurring). Although the Supreme Court's intentions are to eliminate racial discrimination from the jury selection process, I think that the ultimate result will be to impact negatively upon race relations and to infringe upon the right to a fair and impartial jury for defendants of all races.
Although we would prefer otherwise, Justice Thomas correctly pointed out that "... conscious and unconscious prejudice persists in our society and [ ] may influence some juries. Common experience and common sense confirm this understanding." Id. A number of studies support Justice Thomas's observation; the racial composition of juries is relevant to the outcome of the case. See Douglas L. Colbert, Challenging the Challenge: The Thirteenth Amendment as a Prohibition Against the Racial Use of Peremptory Challenges, 76 Cornell L.Rev. 1, 110-112 (1990); Katherine Goldwasser, Limiting a Criminal Defendant's Use of Peremptory Challenges: On Symmetry and the Jury in a Criminal Trial, 102 Harv.L.Rev. 808, 834-835 and n. 165 (1989); Developments in the Law Race and the Criminal Process, 101 Harv. L.Rev. 1472, 1559-1560 (1988). Although ideally a prospective juror's race should not matter, the jury's racial balance may in fact affect the outcome of the case, or at least the defendant's and the public's perception of whether the jury's decision to convict or acquit was affected, if not determined, by its racial composition. As Justice O'Connor stated in her dissent in McCollum, "[u]sing peremptory challenges to secure minority representation on the jury may help to overcome such racial bias, for there is substantial reason to believe that the distorting influence of race is minimized on a racially mixed jury." 505 U.S. *808 at ___, 112 S.Ct. at 2364 (O'Connor, J., dissenting).
In McCollum, Justice Scalia properly concluded that the Supreme Court has "... use[d] the Constitution to destroy the ages-old right of criminal defendants to exercise peremptory challenges as they wish to assure a jury that they consider fair." 505 U.S. at ___, 112 S.Ct. at 2365 (Scalia, J., dissenting). Accordingly, I would give greater respect to the criminal defendant's historical right to exercise peremptory challenges as a means of assuring an unbiased jury and a fair trial, with regard to defendant's constitutional rights as provided by both the federal and state constitutions.[1]
Furthermore, a criminal defendant's right to exercise peremptory challenges is constitutionally guaranteed in Louisiana. Article I, Section 17, of the 1974 Louisiana Constitution provides that, in criminal cases, "[t]he accused shall have the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law." In contrast, there is no constitutional counterpart in Louisiana which guarantees the State's right to exercise peremptory challenges. The State's right in that regard is purely statutory. Furthermore, Article 795 of the Louisiana Code of Criminal Procedure provides that the State is prohibited from exercising peremptory challenges solely upon the basis of the prospective juror's race, while there is no comparable statutory provision prohibiting a defendant's racially discriminatory exercise of peremptory challenges. Thus, the State of Louisiana has afforded greater freedom to criminal defendants in exercising peremptory challenges than it has extended to the prosecutor in order to allow the defendant an opportunity to obtain an impartial jury. As Justice Scalia recognized in his dissent in Edmonson v. Leesville Concrete Co., Inc., 500 U.S. ___, 111 S.Ct. 2077, 2095, 114 L.Ed.2d 660 (1991) (Scalia, J., dissenting), preventing the criminal defendant from exercising racially based peremptory challenges will result in a loss to defendants in obtaining racially diverse juries.
In addition, the public perception of the fairness and equity of the criminal justice system may suffer when a criminal defendant is convicted by a jury that contains no members of the defendant's race. Yet, as the McCollum majority itself stated, "[t]he need for public confidence is especially high in cases involving race-related crimes." McCollum, 505 U.S. at ___, 112 S.Ct. at 2354. That confidence may be undermined by the Supreme Court's decision which takes away the criminal defendant's longstanding right to exercise peremptory challenges freely.
Historically, peremptory challenges have been "... exercised without a reason stated, without inquiry and without being subject to the court's control." Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965). That freedom regarding the exercise of peremptory challenges extended universally to criminal defendants, whether those defendants were white, black, or of any other race. In my opinion, the freedom of all criminal defendants in this regard should be retained.
LEMMON, Justice, concurring.
The evil sought to be remedied by Batson and its progeny was the use of peremptory challenges based on racial discrimination. The Batson decision condemned challenging black jurors on the belief that a black juror, in the trial of a black defendant, would automatically vote for a member of his or her race without regard to the evidence. This court should likewise condemn the practice of a black defendant's challenging a white juror based on the belief that the white juror is less likely to vote for a black defendant than will be a black juror who may be called from the venire if the white juror is challenged on the basis of his race.
While I personally agree with Batson, having been the author of State v. Collier, 553 So.2d 815 (La.1989), I am inclined to disagree with the reasoning in McCollum *809 that a criminal defense attorney, while defending his client against the state, is a state actor.[1] However, I am bound by the authority of that decision regarding state action. Accepting that state action is involved in the defense challenges in this case, I believe that racially discriminatory challenges by the defense, whether the defendant is black or white, must be prohibited.
NOTES
[1] The identical issue was raised in a third case, State v. Malveo, 609 So.2d 802, which has also been decided this day.
[2] In Knox's case, the jury was selected and sworn, and the trial was in progress when the court of appeal issued a stay order.
[3] In Jackson's case, the jury was selected, but not yet sworn, when the trial was stayed by the court of appeal.
[4] In her dissent, Justice O'Connor disagreed with the Court's conclusion. She stated that "... criminal defendants and their lawyers are not government actors when they perform traditional trial functions," McCollum, 505 U.S. at ___, 112 S.Ct. at 2361 (O'Connor, J., dissenting), and that exercising "... peremptory challenges plainly qualifies as a `traditional function' of criminal defense lawyers, see Swain v. Alabama, 380 U.S. 202, 212-219, 85 S.Ct. 824, 831-835, 13 L.Ed.2d 759 (1965); Lewis v. United States, 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1962) ..." McCollum, 505 U.S. at ___, 112 S.Ct. at 2362 (O'Connor, J., dissenting).
[5] The majority stated that "[i]t is an affront to justice to argue that a fair trial includes the right to discriminate against a group of citizens based upon their race," McCollum, 505 U.S. at ___, 112 S.Ct. at 2358, and that "... the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party." McCollum, 505 U.S. at ___, 112 S.Ct. at 2359. "[Therefore], [w]e hold that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges." Id. (emphasis added)
[6] The Court stated:

Be it at the hands of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justiceour citizens' confidence in it. Just as public confidence in criminal justice is undermined by a conviction in a trial where racial discrimination has occurred in jury selection, so is public confidence undermined where a defendant, assisted by racially discriminatory peremptory strikes, obtains an acquittal. McCollum, 505 U.S. at ___, 112 S.Ct. at 2354.
[7] The court of appeal stated:

The conclusion is inescapable: to allow a criminal defense attorney to violate equal protection rights of veniremen when even civil litigants may not do so would not only be irrational, but would adversely affect the public's faith in the criminal justice system. The fact that the criminal defendant is in an adversary position with the state in a criminal trial is irrelevant to the rights of the prospective jurors the state is seeking to protect....
In short, the right to equal protection under the law applies to all citizens, despite the color of their skin. To allow the door of redress to swing only one way would create a mockery of our system of justice. White prospective jurors have just as much right to equal protection as do black prospective jurors, and discrimination against white persons is just as reprehensible a practice as is discrimination against black persons. To find otherwise would be illogical and would undermine the integrity of the criminal justice system....
[Therefore], upon remand, the district court must decide whether the state has shown a prima facie case of discrimination, which would then necessitate the articulation by the defense of racially neutral reasons for the strikes at issue all in accord with the procedure outlined in Batson.
State v. Knox, No. 91-KW-0874 c/w State v. Jackson, No. 91-KW-0990, slip op. at 4-5 (La. App. 1st Cir. July 30, 1991).
[1] The Sixth Amendment of the U.S. Constitution and Article I, Section 16 of the 1974 Louisiana Constitution both provide that an accused is entitled to trial by an impartial jury.
[1] The McCollum decision regarding state action was foreshadowed by the decision in Edmonson v. Leesville Concrete Co., 500 U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) in the context of the exercise of peremptory challenges by private litigants in a civil case.