631 So.2d 1363 (1994)
STATE of Louisiana
v.
Kirk SPENCER.
No. 93-KA-571.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1364 Anthony Falterman, Dist. Atty., Convent, for plaintiff/appellee, State of La.
Ricky Babin, Gonzales, for defendant/appellant, Kirk Spencer.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
The defendant, Kirk Spencer, was convicted of the first-degree murder of Leray Louque in violation of LSA-R.S. 14:30 and was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. The defendant appeals. For the following reasons, we affirm.

FACTS
The facts in this case are largely developed from the trial testimony of Joseph Whitten, an acquaintance and accomplice of the defendant. According to that testimony, the defendant approached Whitten near his home in New Orleans on the afternoon of August 17, 1991, and asked if Whitten would like to take a ride to the country. The defendant was driving an automobile owned by his girlfriend, Saudia Dolliole, who was also in the car. Whitten agreed to go for the ride and got into the vehicle. As the three drove from New Orleans to St. James Parish, the defendant asked Whitten if he would like to make some money. Whitten apparently answered affirmatively and he and the defendant then stopped at a convenience store near Lutcher, Louisiana, where the two men purchased and consumed some beer.
After leaving the store, the defendant drove up to a group of individuals standing nearby and asked where a "hustle" could be found in the area. At trial, Whitten explained that the term "hustle" meant a robbery. When the group did not give him any information, the defendant said that he knew someone who could tell them where to find a "hustle."
The defendant then drove to the Dew Drop Inn, a bar in the area, where he located Crescencio Wright, another acquaintance of the defendant, and got out of the car to talk to him. After a brief discussion, Wright got into the automobile with the other occupants and directed the defendant to the residence of Mr. Morris Louque.
Upon arriving at the residence and seeing several parked cars, the party surmised that Mr. Louque had guests and decided to go elsewhere. They drove to Buck's Tavern in Lutcher where Crescencio Wright was let out of the car to go inside and identify the intended robbery victim, Leray Louque, whom Wright knew. The defendant, Whitten and Dolliole drove around the block to give Wright some time and then stopped near Buck's Tavern. The two men got out of the car and the defendant instructed Dolliole to wait there for them. The defendant went into Buck's Tavern, followed closely by Whitten.
When the two men entered, they saw Crescencio Wright sitting at a table. Seated across from him was Leray Louque, who was counting money and placing it into a vinyl bank bag. The defendant walked over to a counter in the tavern, as if he intended to purchase something, while Whitten walked toward the restroom. However, the defendant then approached the table where Wright and Leray Louque were seated and demanded the money that Louque was counting. The defendant called Whitten who turned from the direction of the restroom and started walking toward the table. Whitten saw the defendant standing to the left of *1365 the victim and pointing a 9mm semiautomatic weapon at the victim's side. When Mr. Louque refused to give the money to the defendant, the defendant fired a single shot into Mr. Louque's side and grabbed the bank bag from him.
The defendant and Whitten fled Buck's Tavern; but when they reached the prearranged location where Dolliole was supposed to be waiting with the car, she was not there. The two men then approached an automobile occupied by two women and a child which was stopped for a traffic signal. They commandeered the vehicle at gunpoint and, with the defendant at the wheel, drove down a street which proved to be a dead end. While driving back up the dead end street, the defendant and Whitten saw Dolliole's vehicle. The men quickly exited the stolen vehicle, got into Dolliole's car, and the three returned to New Orleans. Approximately $800.00 was taken in the robbery.
Leray Louque died on the morning of August 19, 1991, as a result of the gunshot wound to his left side.

COMPOSITION OF THE JURY
In his first three assignments of error, the defendant challenges the composition of the jury.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error the defendant, who is black, contends that the trial court committed reversible error by refusing to allow the defense's peremptory challenges to four prospective jurors.
The record reflects that the selection of the jury occurred as follows:
Jury selection was accomplished by questioning the venire in panels. The first venire panel consisted of six prospective jurors, while the remaining panels each had 12 prospective jurors. By conclusion of voir dire for the sixth venire panel, 12 jurors had been selected and seated. A final 12-member venire panel was then called and questioned in order to select two alternate jurors. The empaneled jury consisted of 7 white jurors and 5 black jurors.[1] A black male and a white female were selected to serve as alternate jurors.
After voir dire of the third venire panel, the defense peremptorily challenged prospective juror Clifton Hymel, who is white. The state, noting that the defendant was black, then voiced an objection that the defense was using its peremptory challenges in a racially discriminatory fashion to exclude white jurors from the jury panel, in contravention of the equal protection principles announced in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At the time of the state's objection, only one juror, a white female, had been seated. The defendant had exercised four peremptory challenges up to that point, all against white prospective jurors.[2] Based on the state's objection, the trial court required the defense to articulate racially neutral reasons in its peremptory challenges. The trial judge accepted the defense's reasons for three of its peremptory challenges, but rejected the reasons alleged for the peremptory challenge of Clifton Hymel, who was then seated as a juror.
During the remaining course of voir dire, the defense exercised seven more peremptory challenges, all against white prospective jurors.[3] Following the state's Batson objections to four of those seven peremptory challenges, the trial judge again required the defense to state racially neutral reasons for the challenges. Finding only one of those peremptory challenges to be supported by *1366 racially neutral reasons,[4] the trial judge rejected the remaining three peremptory challenges and seated Randy Becnel, James Davis, and Lawrence Louque as jurors.
The defendant now argues that the trial court erred in refusing to accept as racially neutral the reasons stated by the defense for its peremptory challenges of jurors Hymel, Becnel, Davis and Louque.
In Batson v. Kentucky, supra, the United States Supreme Court held that an equal protection violation occurs when the state, in a criminal case against a member of a cognizable racial group, exercises peremptory challenges to remove members of the defendant's race from the jury venire for a discriminatory purpose. The defendant in Batson was black, and the Supreme Court set standards in that case for the defendant to establish a prima facie case of purposeful discrimination by the state in the exercise of its peremptory challenges during jury selection. "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
Later, the U.S. Supreme Court expanded the Batson framework in 1991 to cover two additional contexts of the jury selection process. In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the court held that the state could not exclude black jurors on the basis of race, in the trial of a white criminal defendant. In Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Supreme Court decided that private litigants in a civil lawsuit are prohibited from using their peremptory challenges in a racially discriminatory fashion.
Most recently, in Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the U.S. Supreme Court held that a criminal defendant's use of peremptory challenges in a racially discriminatory manner constituted an equal protection violation. The defendants in McCollum were white and defense counsel in that case used peremptory challenges to exclude black jurors strictly on the basis of race.
In State v. Knox, 609 So.2d 803 (La.1992), the Louisiana Supreme Court decided that McCollum equally prohibited a black criminal defendant from exercising peremptory challenges to exclude white jurors based solely on race. Although decided even before Knox, the opinion of this Court in State v. Thomas, 604 So.2d 52 (La.App. 5 Cir.1992) considered the jurisprudence which followed Batson and observed that the standard for determining the occurrence of racial discrimination during jury selection had been modified. The requirements "that defendant be a member of a cognizable racial group and that members of that group be systematically excluded, are no longer valid. Nonetheless, it appears that such facts would be relevant to establish a prima facie showing." Thomas, supra at 59.
We hold, therefore, that, in light of McCollum, supra, and Knox, supra, the equal protection principle governing jury selection can now be stated as follows:
Any party in a criminal case, whether the state or the defendant, is prohibited from exercising peremptory challenges in a racially discriminatory manner. Once a party establishes a prima facie showing of racial discrimination in juror selection, the burden then falls on the other party to satisfy the trial court with a racially neutral explanation for the peremptory challenge under scrutiny. The explanation need not reach the level of justification necessary to prevail on a challenge for cause, but `[t]he neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case at bar.

State v. Collier, 553 So.2d 815 at 820 (citing Batson, supra, 476 U.S. at 97-98, 106 S.Ct. at 1723).
Moreover, the trial judge's rulings in this area are entitled to great deference and *1367 must not be overturned unless manifestly erroneous. Batson, supra at 1724, N. 21; Collier supra at 818; State v. Williams, 545 So.2d 651, 655 (La.App. 5 Cir.1989); writ denied, 556 So.2d 53 (La.1990), writ denied, 584 So.2d 1157 (La.1991).
In the case sub judice, the reason asserted by defense counsel for the peremptory challenge of Clifton Hymel was the prospective juror's view on the death penalty. When asked by defense counsel whether he could vote for the death penalty, Mr. Hymel responded that he could if he thought the defendant was guilty. The defendant argues that this response indicated Mr. Hymel would automatically vote for the death penalty without considering any aggravating or mitigating circumstances. However, Mr. Hymel's response does not reflect any such predisposition to automatic imposition of the death penalty. Mr. Hymel merely stated that he "could" vote for the death penalty. Thus, we find that the trial judge did not abuse his discretion in refusing the defendant's peremptory challenge of prospective juror, Clifton Hymel.
The trial judge also rejected defense counsel's defense reason for the peremptory challenge of prospective juror, Randy Becnel. According to defense counsel, Mr. Becnel gave quick responses to questions about the death penalty and avoided eye contact during questioning. These characteristics, argued defense counsel, indicated that Mr. Becnel was less than candid and that he also harbored a predisposition favoring imposition of the death penalty. The trial judge, who observed Mr. Becnel during voir dire, refused to accept this explanation from defense counsel, and we find, from the record, no manifest error in this ruling.
The reason stated by defense counsel for the peremptory challenge of prospective juror, James Davis, was the response he gave to questioning about the weight to be given police testimony. When asked whether he would give more weight to the testimony of police officers than to the testimony of lay witnesses, Mr. Davis responded, "It would depend on the circumstances. The eyewitnesses. I would give both of them credit." The trial judge, at the state's suggestion, then further questioned Mr. Davis in chambers about his response. Mr. Davis, upon his return to the courtroom, stated that he would not give more credit to a police officer's testimony. While Mr. Davis' responses may possibly reflect some initial confusion about defense counsel's question (although this seems to be a very weak possibility about the response given), his responses do not support the defendant's claim that Mr. Davis exhibited "favoritism" toward the state. Moreover, in this instance, the trial judge himself questioned Mr. Davis to ensure his ability to serve as an impartial juror. Thus, we find that no grounds exist to disturb the trial court's refusal to allow the defense's peremptory challenge of prospective juror, James Davis.
The last prospective juror involved in this assignment of error is Lawrence Louque, who defense counsel claims was antagonistic to the defendant during voir dire. According to defense counsel, Mr. Louque's antagonism could be discerned from his response and the tone of his response to a question which he perceived to be repetitive. However, the trial judge, who observed and heard Mr. Louque during voir dire, stated that he detected no such antagonism toward the defense and refused to allow a peremptory challenge to Mr. Louque's service on the jury. We note that "tone of voice" is impossible to detect from the record. Therefore, absent some reason in the record to find abuse, we must accept the discretion of the trial judge. Thus, again, we find that no grounds exist to support setting aside the trial judge's ruling on this peremptory challenge.
Based on close analysis of the voir dire in this case and careful consideration of the defendant's arguments, we see no manifest error exists with regard to the trial court's rulings on Batson objections voiced by the State. State v. Collier, supra. Accordingly, we find that this first assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
In his second and third assignments of error, defendant argues that the trial *1368 court erred in failing to grant a Batson objection made by the defense during voir dire and further erred in denying the defendant's motion to strike the entire jury panel at the conclusion of voir dire, prior to the panel being sworn.
Batson, supra, and its progeny have previously been discussed. As it pertains to the state's exercise of peremptory challenges in a criminal trial, LSA-C.Cr.P. art. 795 C-E provide:
C. No peremptory challenge made by the state shall be based solely upon the race of the juror. Whenever it appears that the state is systematically excluding jurors on the basis of race, the defense may demand a disclosure of reasons for the challenge. Neither the demand nor the disclosure shall be made within the hearing of any juror or prospective juror.
D.(1) When a demand for disclosure has been made under Paragraph C of this Article, the court shall determine whether there exists an apparent systematic exclusion of jurors on the basis of race.
(2) In making this determination, the court shall not consider any jurors who have been peremptorily challenged by the defense or who have been excused for cause.
(3) If the court finds an apparent systematic exclusion upon the basis of race, it shall then require a statement of reasons for the exercise of peremptory challenges, but only as to those jurors considered in making the finding of apparent systematic exclusion.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged, and for whom no satisfactory racially neutral reason is given may be ordered returned to the panel, or the court may take such other corrective actions as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge, and shall give specific reasons for the corrective action taken.
In the present case, after voir dire of the fourth venire panel, the state voiced a challenge for cause to prospective juror Vondra West, a black female. According to the state, Ms. West's responses during voir dire indicated that she had pre-judged the case, could not be fair, and would never vote for the death penalty. The trial judge, disagreeing with the state's characterization of Ms. West's responses, denied the challenge for cause. The state then used a peremptory challenge to excuse Ms. West from the jury, and the defense asserted a Batson objection to that peremptory challenge. The trial judge denied the objection, noting that he did not see "anything racially involved." Defense counsel responded with the allegation that the state had used all four of its peremptory challenges to that point to remove black prospective jurors.
On appeal, the defendant continues to base his argument on the contention that, prior to the defendant's Batson objection, the state had used its peremptory challenges to remove four black prospective jurors from service on the jury. The record, however, does not support that contention. Before its peremptory challenge of Vondra West, the state had exercised three other peremptory challenges against Nicole Scott (black), Beverly St. Pierre (white) and Mary Smith (black). Thus, contrary to the defense's assertion, the state did not exclusively use its peremptory challenges to remove black prospective jurors. Therefore, we find that no abuse of discretion and no manifest error exists in the trial court's ruling that the defendant failed to establish a prima facie case of racially discriminatory use of peremptory challenges by the state. State v. Collier, supra; State v. Thomas, supra.

ASSIGNMENT OF ERROR NUMBER FOUR

Motion for Mistrial
In his fourth assignment of error, the defendant argues that reversible error occurred when the trial court denied his motion for mistrial after closing argument. In requesting the mistrial, the defendant alleged that the following statement made by the prosecutor to the jury during rebuttal was improper and prejudicial to the defendant: *1369 If you've listened to all of the testimony and you looked at all of the evidence, there is only one verdict that you can come back with. The questionthe question now is, do you have the courage to come back with that verdict?
The defendant urged that the prosecutor's appeal to the jury's courage would be perceived as a challenge to convict the defendant. Anything otherwise according to defendant, would be viewed as cowardice by the jury.
The trial judge denied the motion for mistrial, noting that the defendant failed to raise a contemporaneous objection to the statement, but nevertheless he ruled that, on the merits of the motion, that the prosecutor's statement was not improper. The defendant now contends that the prosecutor's statement and the trial court's refusal to grant a mistrial deprived him of a fair trial.
On appeal, the defendant alleges that the prosecutor's comment was beyond the scope of argument, as governed by LSA-C.Cr.P. art. 774.[5]
The record reflects that while the prosecutor made the challenged remark during the state's rebuttal argument, the defendant did not object to the remark at the time it was made, but rather waited until the state had completed its rebuttal and the trial judge was preparing to instruct the jury. Accordingly, this lack of a contemporaneous objection by the defendant prevented the trial court from immediately remedying the situation, had corrective action been required. LSA-C.Cr.P. art. 841; and, therefore, defendant is precluded from raising this issue on appeal.
However, assuming arguendo, that a contemporaneous objection had been made, we find that the challenged remark is not such as would warrant a mistrial.
The state's rebuttal, considered in its entirety, was well within the scope of argument permitted by LSA-C.Cr.P. art. 774. The isolated remark singled out by the defendant as the basis of his request for a mistrial constituted argument by the prosecutor which was permissible and did not appeal to prejudice, as proscribed by LSA-C.Cr.P. art. 774. Additionally, in the jury charges, the trial judge specifically instructed the jury not to consider as evidence any statements or argument made by counsel, including those made during closing arguments. We therefore conclude that the trial court correctly denied defendant's motion for a mistrial.
Moreover, even if remarks made during closing argument are improper under Article 774, a conviction will not be reversed unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Martin, 550 So.2d 568 (La.1989); State v. Weidert, 568 So.2d 1162 (La.App. 5 Cir.1990), writ denied, 573 So.2d 1118 (La.1991). Assuming for the sake of argument that the prosecutor's remarks were improper, nothing in this record suggests, much less convinces us, that the remarks of the prosecutor influenced the jury or contributed to its verdict.
We find that this assignment of error lacks merit.

SUFFICIENCY OF EVIDENCE
The defendant argues in this last assignment of error that the evidence presented by the state was insufficient to support his conviction for first degree murder under LSA-R.S. 14:30 A(1), which provides:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;
*1370 In particular, the defendant contends that the state failed to meet its burden of proving the identity of the defendant as the perpetrator of the crime, one of the essential elements encompassed in the above-quoted statutory definition of first degree murder.
The standard to be used by the appellate court in evaluating the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Employing that standard to the identity element of the crime, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Duvio, 511 So.2d 821 (La.App. 5 Cir.1987).
In this case, the state relied heavily on the testimony of Joseph Whitten to meet the burden of proving that the defendant was the perpetrator of the first degree murder.
The jury heard Whitten's testimony, both on direct examination and on cross-examination, as well as the testimony of the remaining witnesses presented by the state and by the defense. After hearing this evidence, the jury chose to believe Whitten's testimony identifying the defendant as the perpetrator of this murder. It is the jury's function to determine the weight of the evidence bearing on the defendant's identification. State v. Duvio, supra. It is not the reviewing court's function to re-evaluate the credibility choices and factual findings made by the jury. State v. Dearmas, 606 So.2d 567 (La.App. 5 Cir. 1992). It is our conclusion that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact certainly could have found, beyond a reasonable doubt, that the defendant, Kirk Spencer, was the perpetrator of the first degree murder of Leray Louque. Jackson v. Virginia, supra.
Finally, we have reviewed the record for patent error in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975) and find none.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] A further breakdown of the jury reveals that, of the 7 white jurors, 5 were men and 2 were women, and that the 5 black jurors were comprised of 1 man and 4 women.
[2] Up to that point in the voir dire, the defendant had asserted peremptory challenges to Peggy Oubre, Robert Hymel, Rose Mary Tregre and Clifton Hymel. The state had used two peremptory challenges to exclude one white (Beverly St. Pierre) and one black (Nicole Scott) prospective juror.
[3] The defendant asserted peremptory challenges against prospective jurors Nettie Gregoire (white female), Randy Becnel (white male), Perry Falgoust (white male), Kirk Bailey (white male), Nadine Delatte (white female), James Davis (white male) and Lawrence Louque (white male).
[4] Although the trial judge originally granted the state's Batson objection to the peremptory challenge of prospective juror Perry Falgoust, the judge later reconsidered and overruled the state's objection and thus excused Mr. Falgoust from jury service based on the defense's peremptory challenge.
[5] LSA-C.Cr.P. art. 774 provides:

The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The State's rebuttal shall be confined to answering the argument of the defendant.