839 So.2d 1103 (2003)
STATE of Louisiana
v.
Roy James SHEPHERD, aka Ray James Shepherd.
No. 02-1006.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
*1105 Michael Harson, District Attorney, Lafayette, LA, for Plaintiff/Appellee, State of Louisiana.
G. Paul Marx, Attorney at Law, Lafayette, LA, for Defendant/Appellant, Roy James Shepherd.
Ray James Shepherd, In Proper Person.
Court composed of SYLVIA R. COOKS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges.
GLENN B. GREMILLION, Judge.
The defendant, Roy James Shepherd, a/k/a Ray James Shepherd, was found guilty by the trial court of criminal trespass and guilty by the jury of unauthorized use of a motor vehicle and of attempted theft of property having a value of three hundred dollars or more. He was sentenced to eighteen months at hard labor on the unauthorized use of a motor vehicle charge, to one year in the parish jail on the attempted theft charge, and to six months in the parish jail on the criminal trespass charge, all to run concurrently and with credit for time served. Defendant appeals claiming that the trial court erred in recalling his peremptory challenges by holding that he did not show race-neutral reasons for the challenges; and the evidence was insufficient to support his conviction for attempted theft. For the following reasons, we affirm.

SUFFICIENCY OF EVIDENCE
We will review Defendant's sufficiency of evidence claim first because a finding of insufficient evidence may result in an outright acquittal. State v. Hearold, 603 So.2d 731 (La.1992). Defendant claims the State did not prove the verdict of attempted theft because it did not prove the identity nor the value of the items allegedly subject to the crime. In State v. Lambert, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27, this court held:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See King, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
"The state must prove the value of the stolen property, for upon this proof depends the determination of the severity of the theft, and the punishment for a convicted offender." State v. Bolton, 99-80, p. 5 (La.App. 5 Cir. 6/30/99), 739 So.2d 364, 366 (citations omitted). The trier of fact is to consider the value that the stolen items have to the victim. See State v. Harris, 97-778 (La.3/4/98), 708 So.2d 387.
*1106 "Unless it is shown the owner lacks knowledge of the value of a movable, his testimony as to value is generally admissible, with its weight being left to the jury.' State v. Stack, 97-1176, p. 7 (La.App. 5 Cir. 4/15/98), 710 So.2d 841, 844 (quoting State v. McCray, 305 So.2d 433, 435 (La.1974))." State v. Carthan, 99-512, p. 7 (La.App. 3 Cir. 12/8/99), 765 So.2d 357, 362, writ denied, 00-0359 (La.1/12/01), 778 So.2d 547. "Further, the testimony of an owner of stolen property can constitute ample evidence of the property's value." State v. Davis, 569 So.2d 131, 135 (La.App. 5 Cir. 1990) (citation omitted).
Kevin Fitch, owner of Lafayette Auto Salvage in Lafayette, testified that on Sunday, April 22, 2001, at approximately 9:00 a.m., he observed a vehicle parked in the lot adjacent to his seventy acre salvage yard. He said that no one worked at his yard on Sunday and that the stores in the shopping center were not yet open, so the parked vehicle aroused his suspicions. He said that he stopped at the salvage yard, climbed on top of a fence post, and saw someone driving his "yard truck" inside the fence. He then jumped off the fence and ran to the area where Defendant was driving the truck. According to Fitch, the truck stopped and he heard the sounds of a tire tool unscrewing lug nuts. He observed Defendant taking rims off a vehicle without a jack, which he said was very unusual. Fitch testified that he saw Defendant physically pick up each side of the vehicle, remove three rims, and place them in the back of the truck. Fitch then returned to his vehicle just outside the salvage yard and called the police. While waiting for the police, Fitch observed Defendant leave the salvage yard.
Although he did not bring any documentation to trial to show the price of the rims, Fitch testified that the cost of new rims similar to those Defendant attempted to take would be $300 each at the Ford dealership. He said that he sold those rims for $200 each, the center caps for $50 each, and that the tires should also have some value.
Sergeant Daniel Viator of the Lafayette Police Department testified that he saw Defendant about two feet from the salvage yard fence "getting up on all fours, which led [him] to believe that he had crawled under the fence" and walked from the salvage yard to his vehicle in the shopping center parking lot. At that time, Sergeant Viator arrested Defendant. He said he spoke to Fitch, who directed him to a vehicle parked in the salvage yard. When he viewed the vehicle, there were several rims missing.
Viewing the testimony in the light most favorable to the prosecution, the jury could have easily concluded, beyond a reasonable doubt, that the State identified the items stolen and that the rims in question had a value in excess of three hundred dollars. This assignment of error is without merit.

REVERSE BATSON CHALLENGE
In this assignment of error, Defendant argues the trial court erred in holding a hearing to test the race-neutral reasons for his peremptory challenge of the jury venireman Michael Carriere, and in recalling the challenge for being racially discriminatory. Defendant asserts that his right to make peremptory challenges has constitutional magnitude. However, he acknowledges that a criminal defendant may not use peremptory challenges to purposefully discriminate on the basis of race. See State v. Knox, 609 So.2d 803 (La.1992). Such an objection by the State is sometimes referred to as a "reverse Batson," in reference to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La.3/30/95), 651 So.2d 858.

*1107 The supreme court explained in Knox, 609 So.2d at 806, quoting Georgia v. McCollum, 505 U.S. 42, 60, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992):
Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges.
In addition to Knox and related jurisprudence, we note La.Code Crim.P. art. 795, which states in pertinent part:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
In the present case, Defendant implies that a prima facie case of discrimination was not made. However, he does not elaborate upon the argument, and the record reveals Defendant volunteered race-neutral reasons for all of his challenges, including the challenge of Carriere. During the course of jury selection, the State raised four objections to Defendant's peremptory challenges, arguing Defendant, who was black, was using them in a discriminatory manner against white venire members. The trial court denied these objections. Subsequently, the State raised an objection to the fifth peremptory challenge raised by Defendant, which was against Carriere. Defendant claimed his race-neutral reason for challenging Carriere was related to Carriere's responses to his questions about reasonable doubt and his right to remain silent as it effects his presumption of innocence. The State disagreed and objected to that as a race-neutral reason for the challenge. After a discussion with the State and Defendant, the trial court recalled Carriere to the witness stand and questioned him at length on those issues. Both sides were given the opportunity to question him, but both declined. After removing Carriere from the courtroom, this colloquy occurred:
BY THE COURT: And what is your reason for challenging him?
BY DEFENSE COUNSEL: Judge, my reason wasand my client had requested that I challenge Mr. Carriere for causeI mean, peremptorily. I'm merely abiding by his wishes; I was challenging him peremptorily.
The race neutral issue was I wasn't sure that he understood our discussion of my client exercising his right to remain silent, which I think is evident by *1108 your questioning to him. But if you again, it's your call. If you're satisfied that the colloquy you had with him was curative of that, Mr. Shepherd still, I think, wants me to exercise a peremptory challenge at this time.
BY THE COURT: But you have no basis for it?
BY DEFENSE COUNSEL: No.
The trial court then seated Carriere on the jury. Thus, the issue of whether a prima facie case of discrimination had been made was effectively mooted. State v. Jacobs, 99-991 (La.5/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002). Perhaps for this reason, Defendant's argument centers on the next step, i.e., whether he gave a race-neutral reason for the peremptory challenge at issue.
Thus, the record shows two key points bearing upon Defendant's current arguments. First of all, he did not object to the trial court's individual questioning of Carriere. Therefore, he failed to preserve the issue with a contemporaneous objection, as required by La.Code Crim.P. art. 841. See also Moore, 640 So.2d 561. In State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, writ denied, 94-488 (La.2/3/95), 649 So.2d 400, the trial court further questioned the venireman at issue in chambers. Although the procedure was not at issue, the Spencer court noted the trial court's further examination of the venireman with apparent approval. Id. Further, Defendant in this case explicitly abandoned his reason for the peremptory objection. In the context of a reverse-Batson objection, this amounts to withdrawing the peremptory challenge. Stated another way, the record clearly shows that Defendant acquiesced to the trial court's ruling.
We are cognizant of the jurisprudence cited by Defendant, but he does not take into account the jurisprudence that grew out of Knox, and thus, that jurisprudence does not bear directly upon the instant case. Defendant correctly points out that a party's race-neutral explanation need not be "persuasive, or even plausible." State v. Ball, 00-2277, p. 5 (La.1/25/02), 824 So.2d 1089, 1097. However, in reverse-Batson situations, trial courts have rejected defendants' race-neutral explanations as lacking factual bases. In other words, a defendant would give a race-neutral reason in regard to a venire member, and the trial court would reject the reasoning based upon its observation of the venire member. The appellate courts have upheld such rulings. See, e.g., State v. Tyler, 97-338 (La.9/9/98), 723 So.2d 939, cert. denied, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999) (trial court did not clearly err by choosing not to believe defendant's race-neutral explanation); State v. Dugas, 96-49 (La.App. 3 Cir. 10/9/96), 683 So.2d 1253, writ denied, 96-2652 (La.4/4/97), 692 So.2d 417 (trial court did not agree with defendant's assessment of venire member's facial expressions; the issue was gender, not race); Moore, 640 So.2d 561 (defendant argued his challenge was based upon advanced age of venire members, but court observed defendant accepted a sexagenarian); State v. Schexnayder, 96-98, p. 9 (La.App. 5 Cir. 11/26/96), 685 So.2d 357, 364, writ denied, 97-0067 (La.5/16/97), 693 So.2d 796, cert. denied, 522 U.S. 839, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997), writ denied, 97-2251 (La.1/16/98), 706 So.2d 973 (defendant's explanation that he was "simply not comfortable" with venire member was "practically no reason at all"). These cases show that a trial court's rejection of a factual basis of a defendant's race-neutral explanation will not be reversed absent an abuse of discretion. As the Schexnayder court explained, persuasiveness of the explanation does come into play in the third step of a Batson/Knox analysis, when a trial court determines *1109 whether the moving party has carried the burden of proving purposeful discrimination. Id. at 364.
In the present case, since Defendant effectively admitted at trial that he did not have a race-neutral reason for the peremptory challenge, the trial court's ruling was not erroneous. Therefore, this assignment of error lacks merit.

ERRORS PATENT
After reviewing the record for errors patent on its face in accordance with La.Code Crim.P. art. 920, we note one such error and one abnormality in the verdict form. First, the sentencing proceeding commenced immediately after the trial court's denial of Defendant's Motion for Post Verdict Judgment of Acquittal and Alternatively, for a New Trial. La. Code Crim.P. art. 873 mandates a twenty-four-hour delay between the denial of such motions and the imposition of sentence. In general, this error is not reversible unless the defendant has been prejudiced by the lack of a sentencing delay. State v. Dauzat, 590 So.2d 768 (La.App. 3 Cir. 1991), writ denied, 598 So.2d 355 (La.1992) and State v. Bishop, 98-1147 (La.App. 3 Cir. 2/3/99), 734 So.3d 674, writ denied, 99-2499 (La.2/11/00), 754 So.2d 932. Since Defendant has not alleged any prejudice by the trial court's failure to delay sentencing and has not challenged his sentence on appeal, we find this error to be harmless.
The abnormality involves the jury's verdict. Defendant was charged with theft of tire rims having a value over five hundred dollars. The jury returned a verdict of attempted theft of property having a value of three hundred dollars or more. At the time of trial, La.Code Crim.P. art. 814(A)(26) listed the following responsive verdicts for theft as follows:
Guilty of theft of property having a value of five hundred dollars or more.
Guilty of theft of property having a value of one hundred dollars or more, but less than five hundred dollars.

Guilty of theft of property having a value of less than one hundred dollars.
Guilty of attempted theft of property having a value of one hundred dollars or more.

Guilty of attempted theft of property having a value of less than one hundred dollars.
Guilty of unauthorized use of movables having a value in excess of one thousand dollars, but only if a value in excess of one thousand dollars is stated in the indictment.
Guilty of unauthorized use of movables having a value of one thousand dollars or less.
Not guilty.
(Emphasis added)
However, at the time of the commission of the offense and at the time of trial, the grades of the offense were broken down in La.R.S. 14:67(B) as follows:
(1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
(2) When the misappropriation or taking amounts to a value of three hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
(3) When the misappropriation or taking amounts to less than a value of three hundred dollars, the offender shall be imprisoned for not more than six *1110 months, or may be fined not more than five hundred dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, upon any subsequent conviction he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
(Emphasis added)
Prior to its amendment in 1999, the grades of theft listed in La.R.S. 14:67 corresponded to the responsive verdicts listed in La.Code Crim.P. art. 814, that is both reflected that theft of amounts over one hundred dollars were felony grade offenses. In 1999, the legislature increased the amount of the theft from one hundred dollars to three hundred dollars to reach the felony grade in La. R.S.14:67, but did not make the corresponding change to Article 814(A)(26). Accordingly, it appears the legislature simply failed to amend Article 814 when it amended La.R.S. 14:67. We note that "[w]hen responsive verdicts are mandated by Article 814, the trial court is without authority to vary or to add to the prescribed verdicts." State v. Thibodeaux, 380 So.2d 59, 60 (La.1980). However, in Thibodeaux, the trial court added two charges to the responsive verdicts (possession with intent to distribute and attempted possession with intent to distribute) which were not listed as responsive verdicts in Article 814(A)(45). The jury returned the verdict of guilty of possession with intent to distribute. Clearly, in Thibodeaux, the trial court varied and added to the prescribed verdicts.
The situation in the instant case is much different than in Thibodeaux. It is true that the trial court varied the prescribed responsive verdicts, but if it had presented the jury with the responsive verdicts listed in Article 814, it is possible and even probable that the jury would have returned a verdict which would not have fit into the scheme of La.R.S. 14:67. Because the responsive verdicts are provided for in Article 814, La.Code Crim.P. art. 815 does not apply in this case.[1] The trial court found itself on the horns of a dilemma and chose substance over form which prevented a verdict for which there was no penalty. The legislature's last change to La. R.S. 14:67 indicates a change to the substantive law. Because it was the most recent change, it was proper for the trial court to conform the responsive verdict to reflect the legislative intent.
The supreme court wrote in State v. Ste. Marie, 98-1167 (La.12/18/98), 723 So.2d 407, 409:
As a general rule, "[t]he plain meaning of legislation should be conclusive, except in the `rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' [in which case] the intention of the drafters, rather than the strict controls." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 243, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); see also State v. Bennett, 610 So.2d 120, 122 (La.1992) ("When the literal construction of a statute produces absurd or unreasonable results, the letter must give way to the spirit of the law and the statute construed so as to produce *1111 a reasonable result.") (internal quotation marks and citation omitted).
The plain meaning of the legislature was to increase the minimum amount for a misdemeanor theft from one hundred dollars to three hundred dollars. To have charged the jury according to the literal language of Article 814 would have produced a result "demonstrably at odds with the intentions of [the] drafters" of the change to R.S. 14:67. Id. In charging the jury as it did, the trial court avoided an "absurd and unreasonable result." Id. Therefore, we do not find any error in the trial court's decision on this issue. We simply point out this abnormality and the trial court's application of Article 814 to La.R.S. 14:67 until the legislature corrects its omission.

CONCLUSION
Defendant's conviction is affirmed.
AFFIRMED.
COOKS, J., Dissents in Part, with written reasons.
COOKS, J., Dissents in part:
In State v. Thibodeaux, 380 So.2d 59 (La.1980), the Louisiana Supreme Court clearly held: "When responsive verdicts are mandated by Article 814, the trial court is without authority to vary or to add to the prescribed verdicts." When the jury returns a verdict which is not responsive under La.Code Crim.P. art. 814, the verdict is invalid and "because a sentence based on an invalid verdict is itself invalid (La.C.Cr.P.art.872), the conviction and sentence of defendant must be set aside." Thibodeaux, 380 So.2d at 61. Thibodeaux is very clear and is controlling. Despite the clear dictates of Thibodeaux, the majority, while admitting the trial court varied the verdict, reasons as follows:
It is true that the trial court varied the prescribed responsive verdicts, but if it had presented the jury with the responsive verdicts listed in Article 814, it is possible and even probable that the jury would have returned a verdict which would not have fit into the scheme of La.R.S. 14:67.... The trial court found itself on the horns of a dilemma and chose substance over form which prevented a verdict for which there was no penalty.
The majority also notes "prior to the 1999 amendments, the grades of theft in La.R.S. 14:67 corresponded to the responsive verdicts listed in La.Code Crim.P. art. 814, that is both reflected that theft of amounts over one hundred dollars were felony grade offenses." It is true, as the majority points out, theft over one hundred dollars but less than five hundred dollars was treated as a second grade felony offense vis a vis theft over five hundred dollars which fell in the highest grade. Equally worth noting, however, prior to the 1999 amendment, the offenses listed in La. R.S. 14:67 to identify the grades of theft did not in fact correspond with the "attempted" responsive verdicts found in La.Code Crim.P. art. 814. The only verdicts for attempted theft the jury was allowed to return was "Guilty of attempted theft of property having a value of one hundred dollars or more" or "Guilty of attempted theft of property having a value less than one hundred dollars." Attempted theft of property having a value over five hundred dollars was not listed as a responsive verdict; neither was attempted theft of property having a value over one hundred dollars but less than five hundred dollars. Thus, contrary to the majority's view, the offenses listed in the pre-1999 theft statute and the attempted responsive verdicts did not correspond. State v. Wright, 598 So.2d 493 (La.App. 2 Cir. 1992).
When the jury returned one of the only proper verdicts, i.e., "Guilty of attempted *1112 theft of property having a value of one hundred dollars or more," the courts imposed the sentence under La.R.S. 14:67(B)(2) even though the amount actually taken and charged may have been greater than five hundred dollars. The courts, therefore, placed a cap on the jury's verdict and imposed the sentence nearest in amount to that "over hundred dollars," which was then a second grade felony. The courts did not take liberty to add a responsive attempted verdict for theft "over five hundred dollars" or to vary the possible verdict form, "over one hundred dollars or more," to match the language found in La. R.S. 14:67(B)(2).
The lowest grade theft nearest in amount to "over hundred dollars" is now a misdemeanor and is found in La.R.S. 14:67 B(3). The amended statute provides in all instances when the taking or misappropriation is less than three hundred dollars, defendant shall not be sentenced for more than six months or fined not more than five hundred dollars or both. The amendment, in effect, downgrades defendant's sentence exposure from a felony to a misdemeanor. This is the reality the majority finds vexing. However, there are times when we are without authority to solve the problem, though it might be reasonable to conclude it resulted from oversight or inadvertence. That authority is reserved to the legislature when and if it sees fit to amend the attempted responsive theft verdicts to correspond with the grades provided in La.R.S. 14:67.
In this case, adherence to the holding in Thibodeaux requires that we set aside the jury's verdict as non-responsive and reverse defendant's conviction and sentence.
NOTES
[1] La.Code Crim.P. art. 815 states:

In all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense is a misdemeanor; or
(3) Not Guilty.