# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**12-1358**

**STATE OF LOUISIANA**

**VERSUS**

**BRENDALL BOURQUE**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR129661
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and James T. Genovese, Judges.

**CONVICTIONS AND SENTENCES VACATED. REMANDED FOR FURTHER PROCEEDINGS.**

**Saunders, J., dissents and assigns written reasons.**

**Michael Harson
District Attorney
Post Office Box 3306
Lafayette, LA   70502-3306
(337) 232-5170
COUNSEL FOR APPELLEE:**
      State of Louisiana

**Alan P. Haney
Assistant District Attorney
Post Office Box 4308
Lafayette, LA   70502
(337) 291-7009
COUNSEL FOR APPELLEE:**
      State of Louisiana

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA   70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Brendall Bourque**

**AMY, Judge.**

The defendant was charged with failure to renew his registration as a sex offender, a violation of La.R.S. 15:542.1.1, and failure to notify law enforcement of a change in address, residence, or other registration information, a violation of La.R.S. 15:542.1.2. A jury found the defendant guilty on both counts. Thereafter, the trial court sentenced the defendant to eight years at hard labor on each count. The sentences were to run concurrently and were to be served without the benefit of probation, parole, or suspension of sentence. The defendant appeals. For the following reasons, we vacate the defendant's convictions and sentences and remand for further proceedings.

### Factual and Procedural Background

According to the State, the defendant, Brendall Bourque, was required to report to the Lafayette Parish Sheriff's Office during the month of October 2010 in order to complete his quarterly sex offender registration. The State alleges that the defendant did not report until November 19, 2010, some nineteen days late. Further, the State alleges that the defendant obtained new employment and failed to notify law enforcement of his new employment within the three-day period required by law. The defendant was initially charged with two counts of failure to register as a sex offender, violations of La.R.S. 15:542. The State subsequently filed an amended bill of information charging the defendant with failure to renew his registration as a sex offender, a violation of La.R.S. 15:542.1.1, and failure to notify law enforcement of a change in address, residence, or other registration information, a violation of La.R.S. 15:542.1.2.

A jury subsequently found the defendant guilty of both counts of the amended bill of information. Thereafter, the trial court sentenced the defendant to

eight years at hard labor on each count, to be served concurrently and without the

benefit of probation, parole, or suspension of sentence.[1]

The defendant appeals, asserting as error that:

I.     The trial court erred in denying defense counsel's challenges for cause.

II.    The trial court erred in granting the State's reverse *Batson* challenge and in denying defense counsel's *Batson* challenge.

III.   The trial court erred in denying defense counsel's request for mistrial based on other crimes evidence.

IV.    The trial court erred in denying defense counsel's request for mistrial based on jury misconduct.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all criminal appeals are reviewed for

errors patent on the face of the record. After reviewing the record, the court finds

no errors patent.

*"Reverse-*Batson*" Challenges*

The defendant asserts that the trial court erred in granting the State's

"reverse-*Batson*" challenge. Finding merit with the defendant's assertion of error

in this regard, we do not reach the defendant's other assignments of error.

The supreme court addressed *Batson* challenges in *State v. Nelson*, 10-1724,

pp. 7-9 (La. 3/13/12), 85 So.3d 21, 27-29 (footnotes omitted), stating:

> In [*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)],
> the United States Supreme Court held that the use of peremptory

---

[1] After the defendant's conviction in this case, the State filed a habitual offender bill of information. The trial court adjudicated the defendant to be a fourth felony offender, vacated his sentence for failure to renew his registration as sex offender, and imposed a sentence of twenty years at hard labor, to run concurrently with the sentence for failure to notify law enforcement of a change in address, residence, or other registration information. The defendant's habitual offender adjudication and sentence is on appeal in *State v. Brendall Bourque*, 12-1359 (La.App. 3 Cir. _/_/_), __ So.3d __.

2

challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. *Batson*, 476 U.S. at 96-98, 106 S.Ct. 1712. The holding in *Batson* was initially adopted by this Court in *State v. Collier*, 553 So.2d 815 (La.1989), and has been codified by the legislature in Louisiana Code of Criminal Procedure article 795(C) and (D). While *Batson* discussed a prosecutor's use of peremptory challenges, its holding is equally applicable to criminal defendants. *See*, *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992). The Court in *McCollum* specifically held "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." 505 U.S. at 59, 112 S.Ct. 2348. Further, in *State v. Knox*, this Court considered whether the State may successfully object during voir dire to a minority defendant's alleged racially discriminatory exercise of peremptory challenges. 609 So.2d 803 (La.1992). We applied *McCollum* to hold that the State may invoke *Batson* where a black criminal defendant exercises peremptory challenges against white prospective jurors. *Id.* at 806. An accusation by the State that defense counsel has engaged in such discriminatory conduct has come to be known as a "reverse-*Batson*" challenge.

The Court in *Batson* outlined a three-step test for determining whether a peremptory challenge was based on race. Under *Batson* and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. *Batson*, 476 U.S. at 94-98, 106 S.Ct. 1712. *See also*, *Johnson v. California*, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005); *State v. Sparks*, 1988-0017 (La. 5/11/11), 68 So.3d 435, 468; *State v. Givens*, 99-3518 (La. 1/17/01), 776 So.2d 443, 448.

In *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S.Ct. 1419 (1994), the Supreme Court extended the holding of *Batson*, finding that discrimination in jury selection on the basis of gender is also prohibited by the Equal Protection Clause. The trial court's evaluations of discriminatory intent are due great deference and should not be reversed on appeal unless they are clearly erroneous. *State v. Elie*, 05-1569 (La. 7/10/06), 936 So.2d 791.

In *State v. Givens*, 99-3518 (La. 1/17/01), 776 So.2d 443, the supreme court noted that, in order to establish a prima facie case of discrimination, the moving

party must: 1) demonstrate that the opposing party's challenges were directed at a member or members of a cognizable group; 2) show that the challenges were peremptory, rather than for cause; and 3) show circumstances sufficient to create an inference that the opposing party struck the venireperson because of his or her membership in that particular group. However, we note that it is unnecessary in this case to determine whether the trial court erred in finding that the State had made a prima facie case of discrimination. Because the defendant offered reasons explaining the use of peremptory challenges, the correctness of the trial court's finding of a prima facie case of discrimination is moot. *See Nelson*, 85 So.3d 21.

The record in this case reveals that, during voir dire, both the State and the defendant made *Batson* motions. After the State alleged that the defendant used almost all of his peremptory challenges against white males, the defendant contended that the State had used its peremptory strikes discriminatorily against black females.[2] Although the record contains some contradictory statements concerning how many peremptory challenges had been used by the defendant and how many of those challenges had been used against white males, our review of the record indicates that the defendant had used six out of ten peremptory strikes against white males.[3] At the time the State made its "reverse-*Batson*" challenge, there was one white male remaining on the jury.

---

[2] As we find that the trial court erred in granting the State's "reverse-*Batson*" motion, we do not address the defendant's contention that the trial court erred in denying his *Batson* challenge to the State's use of peremptory challenges.

[3] The trial court stated that the defendant had used seven out of ten strikes on white males, and, later, that the defendant had used six out of nine strikes on white males. Our review indicates that, at the time the "reverse-*Batson*" motion was made, the defendant had used ten peremptory strikes. The record indicates that the defendant struck six white males: Eric Garland, Cecil Guilbeau, Peter Serina, Terry Reddick, Clifton Menard, and Lyle Landry. The defendant's remaining four peremptory strikes were used against females.

The trial court found that the State made a prima facie case regarding the defendant's use of peremptory challenges. Accordingly, the trial court requested that the defendant provide race-neutral and gender-neutral reasons for the challenges. The record indicates that the defendant initially asserted that the strikes were made based on the potential jurors' responses and body language.

With regard to venireman Eric Garland, defense counsel stated that he "did not like the way that he responded to certain questions, nor his body language." After the trial court indicated that it did not consider this to be a race-neutral reason, defense counsel stated that he was concerned about Mr. Garland's prior jury service, that he had children and grandchildren, and Mr. Garland's age. The trial court stated again that it was "not finding any of these to be race or sex neutral reasons." With regard to venireman Peter Serina, defense counsel stated that he had some "initial concerns" but kept him on the panel for observation. Thereafter, based on a conversation with the defendant about Mr. Serina's body language and the way that he was responding to questions, the defendant opted to "back-strike" Mr. Serina. The trial court found that "so far, I'm not getting any race-neutral and gender-neutral issues."

Regarding venireman Terry Reddick, defense counsel noted that he had concerns about Mr. Reddick's previous jury service, his age, and that he had children and grandchildren. Further, he had some concern about Mr. Reddick's body language and how he responded to questions. Concerning venireman Clifton Menard, defense counsel observed that Mr. Menard had two children, and that he had concerns about Mr. Menard's age, his body language and responses to questions. Based on those concerns, defense counsel "felt it was inappropriate and that he wouldn't be a suitable juror in this case." With regard to venireman Lyle

5

Landry, defense counsel decided to exclude him based on his body language and concerns about whether he could be fair and impartial. Although venireman Cecil Guilbeau was mentioned, no reasons were given for his exclusion from the jury.

The trial court found that the defendant had not offered any race-neutral and gender-neutral reasons for striking the aforementioned veniremen. Based on this finding, the trial court found that there was "a pattern" and ultimately directed that Mr. Guilbeau and Mr. Landry, the last two veniremen struck by the defendant, be added back to the panel. The defendant objected to both the trial court's finding and the trial court's determination that Mr. Guilbeau and Mr. Landry were to be added back to the panel.

In *Nelson*, 85 So.3d at 30 (emphasis added), the supreme court discussed race-neutral reasons, stating that:

> This explanation does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be "partial to the defendant because of their shared race." [*Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769 (1995)]; [*Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859 (1991)]; *Batson*, 476 U.S. at 97, 100 S.Ct. 1712. At the second step of the *Batson* inquiry, the issue is the facial validity of the striking party's explanation. *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859; *Sparks*, 68 So.3d at 474. Unless a discriminatory intent is inherent in the striking party's explanation, the reason offered will be deemed race-neutral. *Id*.

Further, in *Nelson*, 85 So.3d at 32, the supreme court noted that the burden in providing a facially neutral reason under the *Batson* analysis was one of "production and not one of persuasion" and cautioned against combining steps two and three of the *Batson* analysis. Where the trial court requires a superficially race-neutral and gender-neutral reason to be at least minimally persuasive during the second step of the *Batson* analysis, the trial court impermissibly shifts the burden of proof from the party challenging the use of peremptory strikes. *Id*. Of

6

course, once the opposing party has presented facially neutral reasons for exercising his peremptory challenges, "an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge." *State v. Collier*, 553 So.2d 815, 820 (La.1989). In so doing, the trial court must conclude that the opposing party's reasons are both neutral and reasonable and not pretextual. *Id.*

Ultimately, the supreme court concluded in *Nelson*, 85 So.3d 21, that the trial court erred in granting the state's "reverse-*Batson*" motion. More specifically, the supreme court found that "[a]lthough none of the proffered reasons appears to inherently violate equal protection, the court nonetheless rejected nine of them for no specific reason. In rejecting defendants' proffered race-neutral reasons, the trial court reasoned that defendants failed to rebut the State's prima facie case of discrimination, essentially finding the defendants' reasons not persuasive enough." *Id.* at 32-33. Accordingly, the supreme court found that the trial court improperly shifted the burden of proof to the defendant when it rejected the defendant's race-neutral reasons "without conducting an analysis of any of the considerations indicative of purposeful discrimination." *Id.* at 33.

Our review of the record indicates that the defendant's proffered reasons for exercising his peremptory challenges were facially race-neutral and gender-neutral. For instance, "[b]ody language has been held to constitute a valid, race-neutral basis for defeating a *Batson* claim." *State v. Coleman*, 06-518, p. 6 (La. 11/2/07), 970 So.2d 511, 515. Thus, when the trial court rejected those reasons without requiring the State to prove purposeful discrimination, the trial court impermissibly shifted the burden of proof to the defendant.

7

Further, the record reveals that the trial court only found that "a pattern" had been proven. The Supreme Court in *Hernandez*, 500 U.S. 352, noted that actions were not unconstitutional solely because they result in a racially disproportionate impact. In order to violate the Equal Protection Clause, there must be proof of discriminatory intent or purpose. *Id.* A determination of such purposeful discrimination, or discriminatory intent or motive, is essential to the *Batson* analysis. *Nelson*, 85 So.3d 21.

Therefore, we find that the trial court erred in granting the State's "reverse-*Batson*" motion. Consequently, we vacate the defendant's convictions and sentences and remand the matter to the trial court for further proceedings. "This error is a structural one, affecting the framework within which the trial proceeded." *Coleman*, 970 So.2d at 517. Further, having found merit with the defendant's assertion of error regarding the State's "reverse-*Batson*" motion, we pretermit the defendant's remaining assignments of error.

## DECREE

For the foregoing reasons, the convictions of the defendant, Brendall Bourque, for failure to renew his registration as a sex offender, a violation of La.R.S. 15:542.1.1, and failure to notify law enforcement of a change in address, residence, or other registration information, a violation of La.R.S. 15:542.1.2, are vacated. The defendant's sentences are also vacated, and the matter is remanded to the trial court for further proceedings.

**CONVICTIONS AND SENTENCES VACATED. REMANDED FOR FURTHER PROCEEDINGS.**

STATE OF LOUISIANA

VERSUS

BRENDALL BOURQUE


**SAUNDERS, J., dissents and assigns written reasons.**

I find no error by the trial court in granting the State's "reverse-*Batson*"

motion.  Accordingly, I respectfully dissent.