ROLAND L. BELSOME, Judge.
|,The defendants appeal their joint convictions of second degree murder and attempted second degree murder. For the following reasons, we vacate the defendants’ convictions and sentences, and remand for further proceedings.

*139
STATEMENT OF THE CASE

The defendants, Dejean Pierce and Tyr-onne Stevenson, were jointly charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:80.1, and one count of attempted second degree murder, a violation of La. R.S. 14:(27)30.1. Both defendants pleaded not guilty at their arraignment. The trial court denied defendants’ motions to suppress the evidence and identification. After a joint trial by a twelve-person jury, both defendants were found guilty as charged on each count. Their post-trial motions were denied, and the defendants each stated that they were ready for sentencing. On their respective convictions for second degree murder, the trial court sentenced each defendant to life imprisonment at hard labor, without benefit of parole, probation, or suspension of|2sentence. Additionally, they received concurrent fifty-year sentences for their attempted second degree murder convictions. This timely appeal followed.

FACTS

On May 17, 2009, Jerrold Smith and Qian Sabatier,[1] who were dating, went to the “Bus Stop” bar at Hickory and Leonidas Streets, in New Orleans. The defendants, Dejean Pierce and Tyronne Stevenson, later entered the bar with their faces partially covered, armed with an AK 47 and 9 mm handgun. They opened fire, firing approximately thirty shots. Qian Sabatier sustained fatal gunshot wounds. Jerrold Smith was injured; but, he survived the attack.[2]
Two days after the shooting, Smith was released from the hospital, and taken to police headquarters. At that time, he named “Duke” and “DJ” as the individuals who had shot him and Qian Sabatier. He later identified both of the defendants in a photographic lineup.

ERRORS PATENT

A review of the record reveals no errors patent on the face of the record.

DISCUSSION

In their respective assignments of error, both defendants assert that the evidence was insufficient to support their convictions.[3] They argue that the State ^failed to prove the identity of the shooters, as it did not negate the reasonable probability of misidentification.
When reviewing the sufficiency of the evidence to support a conviction, this court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
In addition, when circumstantial evidence forms the basis of the conviction, *140 such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
|4In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79 (citation omitted). Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293 (citation omitted). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted).
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. State v. Winston, 11-1342, pp. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citations omitted).
When the identity of the defendant as the perpetrator is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden under Jackson v. Virginia, supra. State v. Galle, p. 31 (La.App. 4 Cir. 2/13/13), 107 So.3d 916, 935; State v. Everett, 11-714, p. 15 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 619, writs denied, 12-1593, 12-1610 (La.2/8/13), 108 So.3d 77.
|sThe defendants focus on the lack of physical evidence linking them to the crime. They further attack the credibility of Jerrold Smith, the surviving victim and primary witness. They contend that his version of the events was inconsistent and unbelievable.[4]
Admittedly, there was no physical evidence definitively linking either defendant to the shootings. However, in his initial statement identifying the defendants as shooters, Smith told Detective Catherine Beckett of the New Orleans Police Department that “DJ” (Pierce) was wearing a black Dickies shirt at the time of the shooting; and, a black Dickies shirt was subsequently found during a search of Pierce’s bedroom.
At trial, Smith testified that Pierce was armed with a 9mm handgun with an extended magazine. Eighteen 9mm spent *141 cartridge casings were found at the crime scene, and according to what Detective Beckett said, an extended 9mm caliber magazine was found in the drawer of a nightstand in Pierce’s bedroom.[5]
Smith further testified that his son told him that the defendants, “DJ” and “Duke,” were “going to get him;” yet, he admitted that he did not pay attention to the defendants when they walked into the bar with their faces obscured, and turned his back to them before the shooting. While Smith testified that he had a “semi-beef’ with defendants, he also said that he recently had seen them after a funeral Rand they had only given each other “hard stares.” Smith also testified that he felt protected because he was armed — however false that sense of security may have been.
Additionally, Detective Beckett testified that after Tyronne “Duke” Stevenson’s arrest, she read him his rights, he said nothing, and refused to sign the rights-of-arrestee form. When she asked him if he wanted to make a statement, he said he had not done anything and asked her what she wanted to know. In Stevenson’s presence, Detective Beckett indicated to a Detective Pardo that there were video recordings from the bar, something she admitted was not true. At that point, Stevenson looked up at her and began laughing. He pulled his T-shirt up over his nose, continued to laugh, and said: “You go [sic] video? You got video? Man, just take me to jail.” Stevenson’s response to Detective Beckett’s interrogation also tends to support the accuracy of Smith’s identifications.
The jury clearly credited Jerrold Smith’s testimony identifying the defendants as the gunmen. Given Smith’s testimony and identification of the defendants together with the evidence taken from Pierce’s home and Stevenson’s response to Detective Beckett’s interrogation, a rational trier of fact could have found beyond a reasonable doubt that defendants Pierce and Stevenson killed Qian Sabatier and wounded Jerrold Smith, while having the specific intent to kill or to inflict great bodily harm upon each victim. Therefore, we find there was sufficient evidence to support the defendants’ convictions.
|7Next, both defendants contend that the trial court erred in granting the State’s reverse-Batson challenge, and reseating juror, Cindy Ehrlicher, who was removed on a peremptory strike by Stevenson.[6],[7] We agree.
*142 The Louisiana Supreme Court addressed Batson challenges in State v. Nelson, 10-1724, pp. 7-9 (La.3/13/12), 85 So.3d 21, 27-29 (footnotes omitted),[8] stating:
In [Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)], the United States Supreme Court held that the use of peremptory challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712. The holding in Batson was initially adopted by this Court in State v. Collier, 553 So.2d 815 (La.1989), and has been codified by the legislature in Louisiana Code of Criminal Procedure article 795(C) and (D). While Batson discussed a prosecutor’s use of peremptory challenges, its holding is equally applicable to criminal defendants. See, Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992). The Court in McCollum specifically held “the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges.” 505 U.S. at 59, 112 S.Ct. 2348. Further, in State v. Knox, this Court considered whether the State may successfully object during voir dire to a minority defendant’s alleged racially discriminatory exercise of peremptory challenges. 609 So.2d 803 (La.1992). We applied McCollum to hold that the State may invoke Batson where a black criminal defendant exercises peremptory | ^challenges against white prospective jurors. Id. at 806. An accusation by the State that defense counsel has engaged in such discriminatory conduct has come to be known as a “reverse-Batson ” challenge. The Court in Batson outlined a three-step test for determining whether a peremptory challenge was based on race. Under Batson and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. Batson, 476 U.S. at 94-98, 106 S.Ct. 1712. See also, State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443, 448.

Batson Step One

In the instant case, the State made a reverse-Batson challenge after Stevenson struck Ehrlicher. Ehrlicher was the eighth white juror to be stricken. Thus, the challenge was based on the number of strikes to white jurors. The trial court found that the State made a prima facie showing of racial discrimination,[9] and Stevenson offered race-neutral reasons for his strikes. Since Stevenson offered reasons explaining the use of peremptory challenges, the correctness of the trial court’s finding of a prima facie case of discrimination is moot. See Nelson, 10-1724 at p. 10, 85 So.3d at 29.

*143
Batson Steps Two and Three

Thus, the analysis proceeds to a review of the trial court’s actions pursuant to step two and three of Batson. In the instant revers e-Batson case, step two involved defendant Stevenson presenting race-neutral reasons for his peremptory | challenges made up until the point of the State’s revers e-Batson objection, to rebut the prima-facie showing of intentional racial discrimination. Batson, 476 U.S. at 97, 106 S.Ct. 1712; Nelson, 10-1724, p. 11, 85 So.3d at 30. The reasons do not have to be persuasive, or even plausible, for at the second step of the Batson inquiry the issue is the facial validity of the striking party’s explanation. Nelson, supra (citation omitted). Unless a discriminatory intent is inherent in the striking party’s explanation, the reason offered will be deemed race-neutral. Id.
When offering race-neutral reasons for the stricken jurors, Stevenson mistakenly asserted that Ehrlicher had stated that her father had been murdered and that her husband had been abducted at gunpoint. At that time, both the State and the trial court asserted that that had been another juror, not Ehrlicher. Pierce then indicated that Stevenson was “one off,” and that Ehrlicher was the victim of a car theft. The State agreed, stating: “Stolen car.” After Stevenson offered race-neutral reasons for the remaining jurors, the trial court stated that it did not find all of Stevenson’s answers “acceptable.” It further explained that Ehrlicher would be reseated on the jury. Stevenson then argued that she was the victim of a stolen car and the instant crime was a “victim crime.”[10] The trial court responded: “She’s now on the jury. I don’t find your race-neutral reason to be grounds to cut her. I find that to be a violation of Bat-son.” In the same challenge conference, Stevenson requested to “revisit” the issue of now-reseated juror Ehrlicher, and the trial court granted that request, with no objection from the State. At that time, he explained |10that she had voted for the defendant in a civil matter, which was “the same thing as voting for the State in a criminal matter.”[11] The trial court indicated that Ehrlicher was still on the jury, and both defendants objected.
In Nelson, which is heavily relied upon by Pierce, the Supreme Court noted that the burden in providing a facially neutral reason under the Batson analysis was one of “production and not one of persuasion” and cautioned against combining steps two and three of the Batson analysis. Nelson, 10-1724, pp. 14-15, 85 So.3d at 32. Where the trial court requires a superficially race-neutral and gender-neutral reason to be at least minimally persuasive during the second step of the Batson analysis, the trial court impermissi-bly shifts the burden of proof from the party challenging the use of peremptory strikes. Id., 10-1724, p. 16, 85 So.3d at 32. Of course, once the opposing party has presented facially neutral reasons for exercising his peremptory challenges, “an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge.” State v. Collier, 553 So.2d 815, 820 (La.1989) (citation omitted). In so doing, the trial court must conclude that the opposing party’s reasons are both *144 neutral and reasonable and not pretextual. Id., 553 So.2d at 821 (citation omitted).
Ultimately, the Nelson Court concluded that the trial court erred in granting the state’s “reverse-Batson ” motion. More specifically, it found that “[although |nnone of the proffered reasons appears to inherently violate equal protection, the court nonetheless rejected nine of them for no specific reason. In rejecting defendants’ proffered race-neutral reasons, the trial court reasoned that defendants failed to rebut the State’s prima facie case of discrimination, essentially finding the defendants’ reasons not persuasive enough.” Nelson, 10-1724, p. 16, 85 So.3d at 32-38. Accordingly, it found that the trial court improperly shifted the burden of proof to the defendant when it rejected the defendant’s race-neutral reasons “without conducting an analysis of any of the considerations indicative of purposeful discrimination.” Id. See also State v. Bourque, 12-1358, p. 7 (La.App. 3 Cir. 6/5/13), 114 So.3d 642, 648 (where the court held that the trial court imper-missibly shifted burden of proof to defendant, at second stage of inquiry into State’s revers e-Batson claim, by rejecting as nonpersuasive defendant’s proffered race-neutral justifications for exercise of peremptory challenges against white males, without requiring State to prove purposeful discrimination).
Likewise, our review of the record reflects that the Stevenson’s proffered reasons for exercising his peremptory challenges were facially race-neutral. Challenges that a prospective juror has been a victim of crime, and as to the nature of one’s vote in a civil trial have been recognized as valid, race-neutral reasons for defeating a Batson claim. State v. Jacobs, 09-1304, pp. 6, 12-13 (La.4/5/10), 32 So.3d 227, 232, 235. Thus, when the trial court rejected those reasons without requiring the state to prove purposeful discrimination, it impermissibly shifted the 112burden of proof to Stevenson. Therefore, we find that the trial court erred in granting the State’s reverse-Batson challenge.
Though the State argues this error is harmless, it implicates a constitutional right guaranteed to the defendant by the State of Louisiana; thus, a harmless error analysis is inappropriate. An accused has a constitutionally guaranteed right to peremptorily challenge jurors. La. Const. art. I, § 17.[12] See also, Nelson, 10-1724, p. 23, 85 So.3d at 37; State v. Lewis, 12-1021, p. 13 (La.3/19/13), 112 So.3d 796, 803; State v. Thompson, 495 So.2d 328, 330 (La.App. 4 Cir.1986); and State v. Seals, 09-1089 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, 315, writ denied, 12-293 (La.10/26/12), 99 So.3d 53, and cert. denied, _ U.S. _, 133 S.Ct. 2796, 186 L.Ed.2d 863 (U.S.2013).
The rationale of State v. Hills, 241 La. 345, 129 So.2d 12 (1960), still provides excellent guidance as to the scope of voir dire examination:
... The intelligent exercise of the right of rejection, by use of ... peremptory challenges, is the meat of the privilegef.]
17 La. Civ. L. Treatise, Criminal Jury Instructions § 8:4 (3d ed.).
Here, the trial court erroneously refused to accept the race-neutral reasons offered by Stevenson, depriving him of his state constitutional right to reject her by way of peremptory challenge.[13] This pre *145 trial error “is a structural one, affecting the framework within which the trial proceeded,” requiring reversal. State v. Bourque, 12-1358, p. 8 (La.App. 3 Cir. 6/5/13), 114 So.3d 642, 649. Compare: Lewis. 12-1021, p. 796, 112 So.3d at 799 (where the Supreme Court distinguished the constitutional right to peremptory challenges and the statutory right to backstrike, finding that the right to use a peremptory challenge to backstrike a provisionally accepted juror implicates a statutory right not guaranteed by the constitution; therefore, it is subject to the harmless error analysis).
In Nelson, the trial court improperly merged steps two and three during a reverse-Batson challenge. Id., 10-1724, p. 16, 85 So.3d at 32. The Supreme Court vacated the defendants’ convictions and sentences due to the trial court’s faulty application of Batson, as well as its error in formulating a remedy for the alleged violation, which included a deprivation of their peremptory challenges. Id., 10-1724, pp. 16-17, 25, 85 So.3d at 32-33, 38-39. Significantly, two Justices wrote separately to explain that the holding on the reverse-Batson issue was reversible error; thus any discussion regarding the validity of the trial court’s remedy was dicta. Id., 10-1724, p. 25, 85 So.3d at 39 (Victory, J., concurring in the result)(Guidry, J., concurring in part, dissenting in part). Likewise, in the instant case, the trial court’s ruling on the reverse-Raison challenges was reversible error.[14]

\ DECREE

Consequently, we vacate both of the defendants’ convictions and sentences and remand the matter to the trial court for further proceedings. Having found merit with the defendants’ assertions of error regarding the State’s reverse-Batson challenge, we pretermit their remaining assignments of error.
REVERSED AND REMANDED.
TOBIAS, J., concurs.

. The first names of the victims are spelled as they are in the indictment — "Qian” and "Jerrold.” However, they are spelled “Keyone” and "Gerald” in the trial transcript. In this opinion, we will use the spellings as they appear in the indictment.

. He was shot in the back, twice in the head, in his elbow, under his left foot, and had bullet fragments in his knee. The bullet that struck him in his back was still lodged in him, and one bullet that struck him in the head was still lodged behind his ear.

. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55 (citation omitted).

. The defendants also argue that Mr. Smith, a convicted felon and admitted drug dealer, fingered them as the shooters and testified against them to avoid being prosecuted on firearms charges. Although the charges against Mr. Smith were dropped before the instant trial, Mr. Smith testified that he never made an agreement in exchange for his testimony, and he believed that the charges were still pending.

. Detective Beckett confirmed that this magazine did not fit the .40 caliber Desert Eagle handgun that also was found in under a mattress in defendant Pierce's bedroom.

. Though Pierce did not object to the trial court’s initial ruling finding Stevenson’s race-neutral reason for striking Ms. Ehrlicher to be "acceptable,” he did expressly object for the record when Stevenson subsequently asserted the additional race-neutral reason that, in a civil matter, Ms. Ehrlicher had voted for the defendant. The trial court then rejected this reason and asked if there were any additional challenges. At that time, Pierce noted his objection to Stevenson’s challenge explaining that both defendants were "working together.”

. Both defendants argue that the trial court erred in not accepting the race-neutral reason(s) articulated by Stevenson in his strike of Ms. Ehrlicher. The direct consequence of the trial court’s ruling and reseating of Ms. Ehrl-icher was that Pierce was deprived of his right to strike her for the same reasons the trial court had found unacceptable in Stevenson’s attempted strikes. The Louisiana Supreme Court has held that "an erroneous ruling of the court which deprives a defendant of one of his peremptory challenges is a substantial violation of his constitutional right to a fair trial and requires reversal.” State v. Sevin, 243 La. 1023, 150 So.2d 1, 3 (1963). Therefore, if the trial court’s rejection of Stevenson’s race neutral reason(s) for striking Ms. Ehrlicher was erroneous, then Pierce was *142 also deprived of the right to peremptorily strike her for those same reason(s).

. It is noted that Nelson was decided after trial in this case.

. In State v. Sparks, 88-17, p. 37 (La.5/11/11), 68 So.3d 435, 468, the Supreme Court noted that, in order to establish a prima facie case of discrimination, the moving party must: 1) demonstrate that the opposing party’s challenges were directed at a member or members of a cognizable group; 2) show that the challenges were peremptory, rather than for cause; and 3) show circumstances sufficient to create an inference that the opposing party struck the venire person because of his or her membership in that particular group.

. The record indicates that Ms. Ehrlicher was actually the victim of two car thefts.

. The transcript from voir dire indicates that Ehrlicher served on a jury in a civil case that ultimately settled. Though Stevenson was again mistaken, neither the State nor the trial court challenged the correctness of his assertion.

. The State, however, is not afforded the same constitutional right to peremptory challenges. Its right is statutory only. See Article I, § 17; and La.C.Cr.P. art. 799.

. Pierce’s right to peremptorily challenge Ms. Ehrlicher was also deprived when he objected to the second race-neutral reason offered by Stevenson, and the trial court ac *145 knowledged the objection, along with the fact that the defendants were working together.

. There is jurisprudence indicating that it would be proper to remand the case to allow the State to rebut the race-neutral reasons offered by the defendant, and direct the trial court to make an express determination, nunc pro tunc, regarding purposeful discrimination. See State v. Maxwell, 09-2235 (La.4/16/10), 33 So.3d 155 (where the Supreme Court remanded the case to allow the State the opportunity to offer race-neutral reasons once this Court found that the defense made a prima facie case for discrimination). If the trial court were able to make a nunc pro tunc determination that purposeful discrimination existed, the need for reversal would be obviated. However, since the trial judge who participated in the instant voir dire is no longer on the bench, we find remand inappropriate. See State v. Myers, 99-1803, p. 6 (La.4/11/00), 761 So.2d 498, 502 (where the Supreme Court found that the trial court observes firsthand the racial composition, demeanor, and general atmosphere of the voir dire, which simply cannot be replicated from a cold transcript). Consequently, the error cannot be remedied, and reversal is required.