NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-997

STATE OF LOUISIANA

VERSUS

JOHNNY LEE HARRIS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09-K-2779-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

AFFIRMED.

Thibodeaux, Chief Judge, dissents and assigns written reasons.

**Earl B. Taylor**
**27th JDC District Attorney**
**Jennifer M. Ardoin**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**400 Travis St., Suite 1702**
**Shreveport, LA 71101**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Johnny Lee Harris**

**SAUNDERS, Judge.**

On June 25, 2009, the State filed a bill of information charging Defendant, Johnny Lee Harris, with armed robbery, a violation of La.R.S. 14:64, although the bill also listed the attempt statute, La.R.S. 14:27. An amended bill was filed the next day to cure the discrepancy. Separate bills were later filed regarding other charges, but the trial at issue proceeded on the charge of attempted armed robbery only.

On September 20, 2011, the parties selected a jury, which began hearing evidence on September 29 and found Defendant guilty on the same date. After various post-trial motions, the trial court held a sentencing hearing on May 31, 2012, and it ordered Defendant to serve thirty years at hard labor. The trial court denied Defendant's motion to reconsider sentence on June 29, 2012. After a number of other motions were filed, Defendant obtained an appeal on September 4, 2014. He now seeks review by this court, assigning two errors.

**FACTS:**

On May 23, 2009, Defendant and three other men drove up to the residence of Wayne and Karen Duplechain in St. Landry Parish. When Mr. Duplechain went outside to see what they wanted, they stated their car was overheating. However, Defendant produced a handgun, demanded money, and threatened to shoot Mr. Duplechain in the head. The victim dove back into his house, slammed the door shut, and armed himself. Defendant and his cohorts fled the scene in their car as Mr. Duplechain exited his home and fired at them. The victim secured a second magazine of ammunition, got in this truck, and gave chase. He was unable to locate the offenders, and he reported the crime to police.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

**ASSIGNMENT OF ERROR NO. 1:**

In his first assignment of error, Defendant argues that the trial court erred by granting the State's "reverse-*Batson*" challenges regarding jurors Duplechain and Quebedeaux. This court previously explained the "reverse-*Batson*" process in a majority opinion:

> The supreme court addressed *Batson* challenges in *State v. Nelson*, 10-1724, pp. 7-9 (La.3/13/12), 85 So.3d 21, 27-29 (footnotes omitted), stating:
>
>> In [*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)], the United States Supreme Court held that the use of peremptory challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. *Batson*, 476 U.S. at 96-98, 106 S.Ct. 1712. The holding in *Batson* was initially adopted by this Court in *State v. Collier*, 553 So.2d 815 (La.1989), and has been codified by the legislature in Louisiana Code of Criminal Procedure article 795(C) and (D). While *Batson* discussed a prosecutor's use of peremptory challenges, its holding is equally applicable to criminal defendants. *See*, *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992). The Court in *McCollum* specifically held "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." 505 U.S. at 59, 112 S.Ct. 2348. Further, in *State v. Knox*, this Court considered whether the State may successfully object during voir dire to a minority defendant's alleged racially discriminatory exercise of peremptory challenges. 609 So.2d 803 (La.1992). We applied *McCollum* to hold that the State may invoke *Batson* where a black criminal defendant exercises peremptory challenges against white prospective jurors. *Id.* at 806. An accusation by the State that defense counsel has engaged in such discriminatory conduct has come to be known as a "reverse-*Batson*" challenge.
>>
>> The Court in *Batson* outlined a three-step test for determining whether a peremptory challenge was based

2

on race. Under *Batson* and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. *Batson*, 476 U.S. at 94-98, 106 S.Ct. 1712. *See also*, *Johnson v. California*, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005); *State v. Sparks*, 1988-0017 (La.5/11/11), 68 So.3d 435, 468; *State v. Givens*, 99-3518 (La.1/17/01), 776 So.2d 443, 448.

In *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the Supreme Court extended the holding of *Batson*, finding that discrimination in jury selection on the basis of gender is also prohibited by the Equal Protection Clause. The trial court's evaluations of discriminatory intent are due great deference and should not be reversed on appeal unless they are clearly erroneous. *State v. Elie*, 05-1569 (La.7/10/06), 936 So.2d 791.

In *State v. Givens*, 99-3518 (La.1/17/01), 776 So.2d 443, the supreme court noted that, in order to establish a prima facie case of discrimination, the moving party must: 1) demonstrate that the opposing party's challenges were directed at a member or members of a cognizable group; 2) show that the challenges were peremptory, rather than for cause; and 3) show circumstances sufficient to create an inference that the opposing party struck the venireperson because of his or her membership in that particular group. However, we note that it is unnecessary in this case to determine whether the trial court erred in finding that the State had made a prima facie case of discrimination. Because the defendant offered reasons explaining the use of peremptory challenges, the correctness of the trial court's finding of a prima facie case of discrimination is moot. *See Nelson*, 85 So.3d 21.

. . . .

In *Nelson*, 85 So.3d at 30 (emphasis added), the supreme court discussed race-neutral reasons, stating that:

This explanation does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be "partial to the defendant because of their shared race." [*Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)]; [*Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ]; *Batson*, 476 U.S. at 97, 106 S.Ct. 1712. At the second step of the *Batson* inquiry, the issue is the facial validity

of the striking party's explanation. *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859; *Sparks*, 68 So.3d at 474. *Unless a discriminatory intent is inherent in the striking party's explanation, the reason offered will be deemed race-neutral. Id.*

Further, in *Nelson*, 85 So.3d at 32, the supreme court noted that the burden in providing a facially neutral reason under the *Batson* analysis was one of "production and not one of persuasion" and cautioned against combining steps two and three of the *Batson* analysis. Where the trial court requires a superficially race-neutral and gender-neutral reason to be at least minimally persuasive during the second step of the *Batson* analysis, the trial court impermissibly shifts the burden of proof from the party challenging the use of peremptory strikes. *Id.* Of course, once the opposing party has presented facially neutral reasons for exercising his peremptory challenges, "an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge." *State v. Collier*, 553 So.2d 815, 820 (La.1989). In so doing, the trial court must conclude that the opposing party's reasons are both neutral and reasonable and not pretextual. *Id.*

. . . .

Therefore, we find that the trial court erred in granting the State's "reverse-*Batson*" motion. Consequently, we vacate the defendant's convictions and sentences and remand the matter to the trial court for further proceedings. "This error is a structural one, affecting the framework within which the trial proceeded." *Coleman*, 970 So.2d at 517. Further, having found merit with the defendant's assertion of error regarding the State's "reverse-*Batson*" motion, we pretermit the defendant's remaining assignments of error.

*State v. Bourque*, 12-1358, pp. 2-4, 6-7, 8 (La.App. 3 Cir. 6/5/13), 114 So.3d 642,

645-46, 647-48, 649, *writ denied*, 13-1598 (3/14/14), 134 So.3d 1187.

In an opinion issued the year before *Bourque*, the supreme court explained

the process in even greater detail:

We have previously held that the trial court may "effectively collapse the first two stages of the *Batson* procedure, whether or not the [State] established a prima facie case of purposeful discrimination, and may then perform the critical third step of weighing the [State's] proof and the [defendant's] race-neutral reasons to determine discriminatory intent." *Jacobs*, 803 So.2d at 941.

4

Our analysis proceeds to review of the trial court's application of steps two and three of *Batson*.

## *Batson* – Steps Two and Three

Pursuant to step two of the *Batson* analysis, the burden shifted to the defendants to articulate race neutral reasons for their use of peremptory challenges. To rebut a prima facie showing of intentional discrimination, the proponent of a peremptory challenge must offer a race-neutral explanation. *Batson*, 476 U.S. at 97, 106 S.Ct. 1712. *See also*, *Snyder v. Louisiana,* 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008); *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). This explanation does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be "partial to the defendant because of their shared race." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859; *Batson*, 476 U.S. at 97, 106 S.Ct. 1712. At the second step of the *Batson* inquiry, the issue is the facial validity of the striking party's explanation. *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859; *Sparks*, 68 So.3d at 474. Unless a discriminatory intent is inherent in the striking party's explanation, the reason offered will be deemed race-neutral. *Id*.

According to the record, before the trial court finalized its decision that the State had satisfied step one of the *Batson* analysis, the defendants offered race-neutral reasons for their use of peremptory challenges. After hearing the reasons for each stricken juror, the court concluded that the reasons given for nine of the jurors were not sufficient to overcome the prima facie case made by the State and ordered those jurors to be re-seated, as outlined under La. C. Cr. P. art. 795(E)

. . . .

After reviewing the race-neutral reasons offered for each of the nine jurors ordered re-seated, we find the trial court improperly applied step two of the *Batson* analysis, and erred in refusing to accept defendants' proffered race-neutral reasons. A fair reading of defendants' explanations for striking these jurors reflect race-neutral justifications. Louisiana courts have found a myriad of explanations to qualify as race-neutral reasons. *See, e.g.*, *State v. Scott*, 04-1312 (La.1/19/06), 921 So.2d 904 (State's justification for striking a prospective African-American juror, that she had a son the same age as defendant and would feel sympathy for defendant's mother, was sufficiently neutral to survive a *Batson* challenge), *cert. denied*, 549 U.S. 858, 127 S.Ct. 137, 166 L.Ed.2d 100; *State v. Wilson*, 40,767 (La.App. 2 Cir. 8/23/06), 938 So.2d 1111 (Prosecutor offered legitimate, race-neutral reason for striking African-American juror when it argued that juror was a minister's wife and might hesitate to impose the death penalty), *writ denied*, 06-2323 (La.4/20/07), 954

So.3d 159, *cert. denied*, 552 U.S. 917, 128 S.Ct. 275, 169 L.Ed.2d 201; *State v. Parker*, 04-1017 (La.App. 5 Cir. 3/29/05, 901 So.2d 513) (When accepted by the trial judge, the lodging of a peremptory challenge based on a juror's body language does not violate *Batson*), *writ denied*, 05-1451 (La.1/13/06), 920 So.2d 235; *State v. Woods*, 97-0800 (La.App. 1 Cir. 6/29/98, 713 So.2d 1231) (Prospective juror's mistaken belief that prosecutor had represented prospective juror in a lawsuit was a legitimate, race-neutral justification for state's peremptory strike), *writ denied*, 98-3041 (La.4/1/99), 741 So.2d 1281.

This Court has followed federal jurisprudence in holding that the explanation offered need not be persuasive, or even plausible, and unless a discriminatory intent is inherent in the explanation, the reason offered may be deemed race-neutral. *See*, *Allen*, 913 So.2d at 798; *Jacobs*, 803 So.2d at 938. In reviewing the trial court's action, the court of appeal ignored these guidelines, merely finding that the race-neutral reasons offered by defendant were "thin" and that the State had adequately rebutted each of those reasons. *Nelson*, 41 So.3d at 657. While the trial court found the number of challenges against white jurors to be "eyebrow raising," we find defendants presented plausible and reasonable race-neutral reasons that negate an inference of purposeful racial discrimination sufficient to satisfy step two of *Batson*. Whether the reasons are substantial, or whether they are supported by the record, is a question to be determined in the third stage of the *Batson* analysis. *State v. Green*, 94-0887 (La.5/22/95), 655 So.2d 272, 289. The burden in step two is merely one of production, not one of persuasion. *Myers*, 761 So.2d at 501.

In step three of the *Batson* analysis, the court must then determine whether the objecting party has carried his burden of proving purposeful discrimination. *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 2331-32, 162 L.Ed.2d 196 (2005); *Batson*, 476 U.S. at 98, 106 S.Ct. 1712. This final step involves evaluating "the persuasiveness of the justification" proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769.

In *Purkett,* the Supreme Court warned against "combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. Instead, the Court noted "[i]t is not until the third step that the persuasiveness of the justification becomes relevant--the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id*. The Court explained that blurring the *Batson* stages can impermissibly shift the burden onto the proponent of the strike:

> But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is

quite different from saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*Id.*

After reviewing the record, it is clear the trial court merged the steps of the *Batson* analysis which improperly shifted the burden of proof to defense counsel--the proponent of the strike. The record unquestionably demonstrates the trial court never made a finding that the race neutral reasons offered by defendants were pretextual. Although none of the proffered reasons appears to inherently violate equal protection, the court nonetheless rejected nine of them for no specific reason. In rejecting defendants' proffered race-neutral reasons, the trial court reasoned that defendants failed to rebut the State's prima facie case of discrimination, essentially finding the defendants' reasons not persuasive enough. The court erred in putting the burden of persuasion on the defendants. *See*, *Green*, 655 So.2d at 290. *Batson* makes clear that the burden is on the opponent of the strike to show purposeful discrimination. *See*, *Batson,* 476 U.S. at 94, 106 S.Ct. 1712.

Even more remarkable is the fact that the trial court ordered the jurors re-seated although it declined to find that defense counsel engaged in purposeful discrimination. The record reflects the court ordered the jurors re-seated immediately after hearing and rejecting defendants' race-neutral reasons, without conducting an analysis of any of the considerations found indicative of purposeful discrimination, as set forth by the Supreme Court. *See*, *Miller-El*, 545 U.S. at 255-63, 125 S.Ct. 2317. The trial court made repeated statements that although there was no evidence to suggest defense counsel's reasons were pretextual or that defense counsel had any discriminatory intent, the discriminatory effect of the peremptory challenges used by defense counsel was sufficient to violate *Batson*.

The trial court's reluctance to impugn the motive of counsel and refusal to find purposeful discrimination runs afoul of the Supreme Court's reminder in *Hernandez*:

A court addressing this issue must keep in mind the fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact . . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."

*Hernandez*, 500 U.S. at 359-60, 111 S.Ct. 1859 (internal citations omitted). The Court further explained that "[d]iscriminatory purpose

. . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (Internal citations omitted). A determination of "purposeful discrimination" or "discriminatory intent" or "discriminatory motive" is essential in step three. *See*, *Batson*, 476 U.S. at 98, 106 S.Ct. 1712; *see also*, *Miller-El*, 545 U.S. at 253, 125 S.Ct. 2317 (discussing clues to "the prosecutors' intentions"); *State v. Coleman*, 06-0518 (La.11/2/07), 970 So.2d 511, 516 (finding "the State consciously took race into account"). We have found no authority to permit a trial court to find a *Batson* violation based upon a de facto effect alone.

Thus, we find the court of appeal erred in affirming the trial court's finding of a *Batson* violation. Because the trial court's application of *Batson* was legally flawed, we must reverse the finding that defendants violated *Batson*.

*State v. Nelson*, 10-1724, pp. 10-11, 14-17 (La. 3/13/12), 85 So.3d 21, 29-30, 31-33 (footnote omitted).

Returning to the present case, we note the following colloquy:

MR. RICHARD [Prosecutor]: Well, let's go back. Let's do Ms. Guidroz.

THE COURT: Are you making a Batson Challenge?

MR. RICHARD: Yeap. [sic]

. . . .

THE COURT: Well, the Court notes that out of five challenges on the first panel the defendant challenged three white females?

MR. RICHARD: Right.

THE COURT: One black female and one white male.

. . . .

MR. RICHARD: Yeah, and we're still on the back row. I'm going back to [challenge Defendant's use of preemptory challenge regarding] Ms. Guidroz.

THE COURT: All right; what's your reasons for challenging, Mr. Claiborne?

MR. CLAIBORNE: She [Ms. Guidroz] has a son who's convicted of a crime and also her spouse works for Slemco and I felt that she would be very conservative.

THE COURT: Okay.

. . . .

THE COURT: The Batson challenge denied. All right; let's go back on the bottom. . . .

. . . .

MR. CLAIBORNE: Judge, who is our last juror right now before I decide to challenge?

THE COURT: Ms. Kandace Quebedeaux.

MR. CLAIBORNE: So with Ms. Quebedeaux we would have twelve. [Defendant exercises a peremptory challenge to remove] Ms. Duplechain.

MR. RICHARD: Batson challenge again. [Ms. Duplechain is] a white female.

MR. CLAIBORNE: Well, she says she's realized Jimmy Darbonne isn't involved in this matter. I think she said that's her neighbor.

THE COURT: It's a neighbor, didn't say he was involved.

MR. CLAIBORNE: She says she knows Mr. Richard and that Mr. Darbonne is her neighbor and we know that he works for the Sheriff's Department and that would be my basis for a challenge.

THE COURT: But she also clearly said it would not affect her and all. In this particular case, I don't think that's sufficient basis for the peremptory challenge.

MR. CLAIBORNE: Okay. My next one would be Ms. Kandace Quebedeaux.

MR. RICHARD: Same thing.

MR. CLAIBORNE: All right; she is -- she was bonded with Mr. Richard, she said she was a runner, Mr. Richard [said], "Oh well, I'm also a runner" and they had a little laughing, giggling connection going on there. I figured she was bonding with him as a runner and I'm exercising that challenge.

THE COURT: Denied.

9

MR. CLAIBORNE: That's it. I would like the Court to note for the record my exceptions to both of those denials.

THE COURT: [Your] objections are noted for the record. Any back strikes, Mr. Richard?

MR. RICHARD: No sir. Oh, for the record by the way, Kandace Quebedeaux is also a white female. I just want to make sure the record says that.

MR. CLAIBORNE: That's it, Judge, I don't have any other back strikes.

After a thorough review of the record, we find no error by the trial court. Regarding Duplechain, the trial court stated reasons for ruling as it did. Further, despite only stating one word, the trial court clearly considered and rejected Defendant's stated reasons for attempting to strike juror Quebedeaux. The trial court's rulings are entitled to deference, and we cannot say that its rulings were unreasonable. *See State v. Bivens*, 11-156 (La.App. 3 Cir. 10/5/11), 74 So.3d 782, 796-97, *writ denied*, 11-2494 (La. 3/30/12), 85 So.3d 115.

## ASSIGNMENT OF ERROR NO. 2:

In his second assignment of error, Defendant argues that his thirty-year sentence is constitutionally excessive. On June 29, 2012, Defendant filed a written motion to reconsider sentence. It simply alleged the sentence was excessive, but also alleged the trial court had failed to state any mitigating factors. Further, he requested a suspended and probated sentence. The trial court noted that the victim was traumatized by the incident and denied the motion in open court on September 4, 2014.

In the current appeal, Defendant makes no substantive argument. The analysis for an excessive sentence claim is settled:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so

10

grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

In addition, the courts of this state have used the following three-step analysis: "The court should consider three factors in reviewing a judge's sentencing discretion: 1. the nature of the crime, 2. the nature and background of the offender, and 3. the sentence imposed for similar crimes by the same court and other courts." *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183 (citations omitted).

Regarding the first *Lisotta* factor, we note that attempted armed robbery is a serious offense. Regarding the second factor, neither the sentencing hearing nor the resentencing hearing contain pertinent information regarding Defendant, other than the fact he was the party in possession of a weapon. However, regarding the third factor, a thirty-year sentence does not exceed the norms of Louisiana jurisprudence. *See, e.g., State v. Ambeau*, 08-1191 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, *writ denied*, 09-719 (La. 12/11/09), 23 So.3d 913 (twenty-five years not excessive); *State v. Sudds*, 43,689 (La.App. 2 Cir. 12/3/08), 998 So.2d 851, *writ denied*, 09-154 (La. 10/16/09), 19 So.3d 472 (thirty years); *State v. Moses*, 05-787 (La.App. 5 Cir. 5/9/06), 932 So.2d 701, *writ denied*, 06-2171 (La. 4/5/07), 954 So.2d 140 (thirty-six years).

Given the above, Defendant's sentence does not "shock our sense of justice." *Barling*, 779 So.2d 1042. accordingly, we find that Defendant's thirty-year sentence is not excessive, and this assignment of error lacks merit.

**DISPOSITION:**

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

STATE OF LOUISIANA

VERSUS

JOHNNY LEE HARRIS

**THIBODEAUX, Chief Judge, dissenting.**

A trial court's ruling is not entitled to deference if there is legal error. The legal error is transparent in this case, and the majority does not recognize it. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1719 (1986), has existed for nearly thirty years, and courts are still struggling to properly apply its procedural dictates. This case is such an example.

The majority recognizes what is clear in the jurisprudence—that the first two steps of the *Batson* analysis can be conflated. Since the trial court instructed defense counsel to provide race-neutral reasons for the strikes at issue, it can be treated as having found prima facie discrimination. However, the trial court's analysis skipped the third stage of *Batson*. The majority likewise does so. It is clear from *State v. Bourque*, 12-1350 (La.App. 3 Cir. 6/5/13), 114 So.3d 642, *writ denied*, 13-1598 (3/14/14), 134 So.3d 1187, and *State v. Nelson*, 10-1724 (La. 3/13/12), 85 So.3d 21, that an omission of the third stage is error.

The trial court did not conduct the third step of the *Batson* analysis and, thus, did not comply with the requirements explained in *Nelson* and *Bourque*. Pursuant to those cases, the conviction and sentence should be vacated and the case remanded for a new trial.

The majority conveniently oversimplifies the legal application of *Batson*, *Nelson*, and *Bourque* by relying on the trial court's rejection of

Defendant's proferred race-neutral reasons for strking juror Quebedeaux. However, the trial court's observations and credibility assessments are not at issue. The problem is that the third step of the *Batson* analysis was omitted in this case. In focusing on the trial court's rejection of Defendant's reasons, the majority improperly shifts the burden of proof to *Defendant* "without conducting an analysis of any of the considerations indicative of purposeful discrimination." *State v. Nelson*, 10-1724 (La. 3/13/12), 85 So.3d 21, 33. That is exactly what happened in this case. Why that is not recognized is inexplicable.[1]

For the foregoing reasons, I respectfully dissent.

---

[1]The author of the majority opinion was in the majority in *Bourque* which relied heavily upon *Nelson*.